[Nos. D050464, D050465. Fourth Dist., Div. One. July 25, 2007.]

H. ROGER WANG et al., Plaintiffs and Appellants, v.
WAL-MART REAL ESTATE BUSINESS TRUST et al., Defendants and
Respondents.

**COUNSEL**

Ross, Dixon & Bell, Mohammed K. Ghods, Alec M. Barinholtz and William A. Stahr for Plaintiffs and Appellants.

Gresham, Savage, Nolan & Tilden, Theodore K. Stream and Jennifer M. Guenther for Defendants and Respondents Wal-Mart Real Estate Business Trust, Wal-Mart Stores, Inc., and City of San Bernardino.

Cooper, White & Cooper, Stephen D. Kaus and Denise C. Reagan for Defendant and Respondent LSA Associates, Inc.

Weil & Drage, Jean W. Weil and Anthony D. Platt for Defendants and Respondents Hall & Foreman, Inc., and Harold Garcelon.

**OPINION**

**HUFFMAN, J.**—Plaintiffs and appellants H. Roger Wang and Vivine Wang (the Wangs or plaintiffs) brought this action for breach of contract, fraud, conspiracy to defraud and other theories, against numerous defendants, including defendant and respondent Wal-Mart Stores, Inc.,[1] based on a dispute stemming from the sale of two parcels of plaintiffs' real property to Wal-Mart. Plaintiffs allege their remaining adjoining parcels of property were wrongfully deprived of street access through the actions of these defendants in planning and developing a Wal-Mart store. The named defendants also include the City of San Bernardino (the City), the civil engineering firm involved in the project, Hall & Foreman Inc., and its principal Harold Garcelon (sometimes collectively Hall et al.). Traffic consultants LSA Associates, Inc. (LSA) are also named as defendants.[2]

In response to the filing of the complaint, Wal-Mart and the City (jointly represented by the same attorneys) brought a special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16,[3] commonly referred to as the anti-SLAPP statute (strategic lawsuit against public participation). (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 90–92 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).) The other defendants, Hall et al. and LSA, filed joinders and supplemental joinders in

---

[1] We will refer collectively to defendants Wal-Mart Real Estate Business Trust, a Delaware business trust, and Wal-Mart Stores, Inc., a Delaware corporation, as Wal-Mart.

[2] The California Department of Transportation (Caltrans) was also sued for inverse condemnation and declaratory relief. It has answered the complaint and is not a party to this appeal.

[3] All statutory references are to the Code of Civil Procedure unless otherwise specified.

the motion. Demurrers were also filed by all defendants. The trial court allowed the joinders and granted the motions, concluding that all of the Wangs' allegations arose from protected governmental petitioning activity, and further, they would not be able to show probable success on the merits. The demurrers were taken off calendar as moot. Subsequently, the court awarded attorney fees to all moving and joining defendants.

The Wangs appeal, contending the trial court erred as a matter of law in finding the anti-SLAPP statute was applicable. They argue their causes of action did not arise out of protected petitioning activity, but rather were ordinary breach of contract and fraud allegations, such that the permitting activity engaged in by the defendants, in connection with the development of the Wal-Mart property, was incidental to and only amounts to evidence of the substantive allegations. The Wangs also contend the trial court abused its discretion in allowing the joinders and in denying their request to conduct discovery, and they argue that in any case, they have established a probability of prevailing on the merits of each of their causes of action. They also object that attorney fees should not have been awarded.

On de novo review, we agree with the Wangs that the trial court errone-ously found that the references in the various causes of action to the Wal-Mart applications for City development permits, as carried out by the other defendants, converted these causes of action into liability claims that were based principally upon protected speech or conduct. (*Navellier, supra*, 29 Cal.4th 82, 90–92; § 425.16, subd. (e)(2).) Rather, the Wangs' breach of contract, fraud, and related causes of action are factually based on allegations about the manner in which the private transactions between the parties were conducted, and the governmental development permit applications were only incidental or collateral to the principal purposes of those transactions. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929–932 [116 Cal.Rptr.2d 187] (*Kajima Engineering*); *Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414 [9 Cal.Rptr.3d 242] (*Scott*).) On this major issue, the trial court prematurely terminated this action and we need not address the second prong of the anti-SLAPP analysis, nor the related challenges to the joinders and discovery rulings. We reverse the orders for further appropriate proceedings in the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

#### Transaction/Land Use Planning

As a preliminary note, we will outline these facts in a somewhat abbreviated manner, since the purpose of this opinion is not to resolve the merits of the parties' contract and tort dispute, but rather to determine whether the anti-SLAPP statutory scheme properly applies to this set of allegations. The parties are very far apart in their versions of how they believe the contract terms were formulated and whether any extra-contractual activity created any enforceable rights, with regard to the manner in which the transactions between the parties and the land use planning process were conducted. With those considerations in mind, we set forth the facts as presented in the complaint and in the opposing declarations, to evaluate the nature of the facts upon which liability is claimed. (§ 425.16, subd. (b)(2).)

In 1999, the Wangs entered into a purchase agreement to sell two parcels of their vacant property in San Bernardino to a company which, in 2000, assigned the contract to Wal-Mart. The Wangs retained two adjoining parcels for future development, located to the northeast of the Wal-Mart parcels, near the I-215 Freeway. The two Wal-Mart parcels were cut in half by Gannett Parkway, which connected McArthur Boulevard to Hallmark Parkway. At that time, Gannett Parkway provided access to the other two Wang adjoining properties. All parties anticipated that the two Wal-Mart parcels would be unified, which would require the existing portion of Gannett Parkway to be vacated. The parties discussed future street design and traffic plans, since Caltrans had proposed a freeway off-ramp nearby which would possibly cut into the proposed store location. At various times, the parties discussed realigning Gannett Parkway, creating a bend or "knuckle" in McArthur, or dedicating a new street to replace Gannett Parkway, for purposes of keeping McArthur and Hallmark connected.

In the purchase contract, the parties agreed to cooperate with each other to accomplish the transaction, including executing any necessary additional documents. The contract also provided that the purchaser had the sole discretion to approve certain conditions, including the obtaining of necessary discretionary and ministerial approvals and permits required for construction of a commercial retail center, and the vacation of such portion of McArthur Boulevard as the purchaser approved. The purchase agreement itself does not include any terms or requirements for preserving street access to the remaining parcels owned by the Wangs. The Wangs' attorney, Mohammed Ghods, wrote a letter dated September 11, 2000 to Wal-Mart's attorney, Mark

Ostoich, stating that only those two attorneys could make changes in writing to the plans, and no representations or agreements by anyone else would be binding upon the respective clients.

While the escrow was pending, Wal-Mart hired Hall et al., a civil engineering firm, to process its development plans. Hall et al. retained LSA as traffic consultants. At the request of Wal-Mart, the Wangs authorized the filing of an authorization form for a development application to the City in their names. This authorization form appointed Hall et al. as the applicant to represent the owners' interest in connection with the development application. Wal-Mart's counsel also sent the Wangs a copy of the development application that Wal-Mart was proposing, which they signed.

This development application included an initial impact study (by Tom Dodson & Associates, not a party here) and a traffic study prepared by LSA. The traffic study states that as part of the project, portions of both Gannett Parkway and McArthur Boulevard would be vacated, and McArthur Boulevard would be modified to "knuckle" and to extend west to Hallmark Parkway, and it included a map to that effect, showing a realigned McArthur Boulevard. In an apparent effort to clarify their terms, the Wangs' attorney sent the executed authorization to Wal-Mart's counsel along with a December 19, 2000 letter emphasizing: "Although the application referenced on the form is blank, I trust it is understood that my clients' authorization is based on the application that was delivered to me and is limited thereto."

The next phases of the development process continued the revising and changing of the professional studies and plans for the properties, and required a total of three amendments to the purchase agreement for extensions of the time for escrow to close. In the first such amendment, Wal-Mart gave its deemed approval of the effect of certain potential improvements at the intersection of the freeway and University Parkway (characterized by plaintiffs as a waiver of contingencies about proposed freeway improvements). With respect to the plans for the properties, City officials prepared a staff report, which tracked the development application by showing portions of both Gannett Parkway and McArthur Boulevard would be vacated, although discussions continued between Wal-Mart and the City about the location of the freeway off-ramp. One of the maps attached, exhibit 3, showed the area of proposed dedication of a roadway connecting Hallmark Parkway and McArthur Boulevard. The city council approved the staff report's recommendation on February 20, 2001. The City sent notice to the Wangs and other local property owners about the proposed vacation of portions of McArthur Boulevard and Gannett Parkway, along with a form they could use to indicate whether they had any "conflict" with the proposal. The Wangs did not believe there would be any conflict so they returned the form, which was received on February 26, 2001.

In February 2001, Wal-Mart communicated to the City planner, James Funk, that it had concerns about some traffic aspects of the development application concerning the relocation of Gannett Parkway, because it believed the current plan was not feasible. Mr. Funk revised the staff report and sent it and a second request for city council action, dated March 12, 2001, in which he explained: "Initially, Wal-Mart had proposed to dedicate a realignment of McArthur Boulevard to connect with Hallmark Parkway. They have now indicated to us that the realignment would conflict with the proposed location of the building. The City Traffic Division and the City Fire Department have both indicated concern over terminating McArthur Boulevard if the vacation is approved. In response, Wal-Mart representatives have indicated to us that they would dedicate an easement for emergency vehicle access which they will also use as a truck alley for access to the truck dock."

The revised staff report contained a revised exhibit 3, showing the emergency vehicle access easement, rather than the previous proposed right-of-way dedication off of McArthur Boulevard. The city council approved the revised report at an April 2, 2001 meeting, and adopted a resolution to vacate portions of Gannett and McArthur. The Wangs contend they received no notice from Wal-Mart or the City that instead of creating a street to replace Gannett Parkway, Wal-Mart would be providing an easement for emergency vehicle access and a truck alley.

Meanwhile, Wal-Mart's attorney notified the Wangs' counsel that he anticipated litigation on an environmental challenge to the project under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.), and an extension of the escrow was needed. The Wangs agreed. The project was approved and a negative declaration was issued under CEQA in July of 2001. Escrow closed in April 2002, and construction started.

In October 2003, the Wangs visited the site following the completion of construction. They learned that McArthur Boulevard and Hallmark Parkway were now disconnected, no street had been constructed to lead to their remaining properties, and they found a "locked gate" and no public access to the alley behind the new Wal-Mart store. They contend their property now fronted onto a dead end or cul-de-sac and was therefore impaired in value.

B

Complaint and Special Motion to Strike; Joinders

In August 2005, the Wangs filed their complaint, first alleging breach of contract against Wal-Mart, due to the total vacating of Gannett Parkway without replacement, to their detriment in the form of loss of value of their

adjoining property. As against Wal-Mart, the Wangs also allege a cause of action for fraud and conspiracy to defraud (third cause of action), based upon defendants' actions in "falsely representing to plaintiffs in the planning permit application . . . that the Gannett Parkway would be realigned." Generally, the Wangs alleged that the proposed relocation of Gannett Parkway was a key to their agreements to extend the time for closing of escrow.

In the third cause of action for fraud and conspiracy, Hall et al. and LSA are also named as defendants. These defendants allegedly fraudulently concealed material facts from plaintiffs with regard to Wal-Mart's secret intentions and plans for the development of the property, particularly with respect to postconstruction traffic flow and street alignment.

In the second cause of action for breach of fiduciary duty against Hall et al., the Wangs alleged that these defendants, their appointed agents, breached their duties to represent the interests of the Wangs with regard to the planning and permitting required to develop the Wal-Mart property, and caused them monetary damage. The Wangs contend that Hall et al. assisted in Wal-Mart's deception "by not objecting to this significant change in plans [street vacation] and not advising Wangs about it. Yet they knew of the change because they prepared and submitted the revised site plan drawings."

The fifth cause of action for declaratory and injunctive relief is pled against Wal-Mart, and also the City and Caltrans. The City is also charged with inverse condemnation, as is Caltrans (fourth cause of action).

In response to the filing of the complaint, Wal-Mart filed its special motion to strike, also on behalf of the City. Shortly thereafter, joinders were filed by Hall et al. and LSA, as well as demurrers by all these defendants. A continuance was granted and Hall et al. and LSA supplemented their previous joinders by adding further procedural authorities to justify the notices of joinder.

In the motions to strike and joinders, all defendants argued all allegations of the complaint arose from protected petitioning activity, and nothing in the purchase agreement specified any particular street arrangements. They contended that if all references in the pleading to the development application and related permits were removed, no operative allegations would be left. Although the Wangs sought leave of court to conduct depositions of certain knowledgeable parties, including City planner Funk, Attorney Ostoich, and engineer Garcelon, those requests were denied, as the trial court believed all the relevant documents were in the public record. (§ 425.16, subd. (g).) Previously, Wal-Mart had obtained copies of the escrow file, and disclosed them to the Wangs.

## C

### Ruling and Appeal

In its ruling, the trial court initially granted judicial notice as requested by both sides, of certain documents included in court files and certified as matters of public record in the City records. The court took judicial notice to the extent of recognizing the existence of these documents, but not the contents thereof, except as to the recorded deeds, explaining: "The import of the court's taking this judicial notice is that the 'petition process' is implicated, for the purpose of considering the anti SLAPP motion."

Next, the court allowed the joinders and supplemental joinders by Hall et al. and LSA, as sufficient for their intended purpose. (See § 425.16, subd. (f); *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382 [129 Cal.Rptr.2d 892]; *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26 [1 Cal.Rptr.3d 390].) A tentative ruling had previously been issued to deny the motion, for lack of an adequate showing that the complaint arose from protected petitioning activities. However, after argument, the trial court issued a ruling on submitted matters, to grant all the motions to strike under the following reasoning: " 'The statute's definitional focus is not on the form of the plaintiff's cause of action but rather the defendant's activity giving rise to his or her asserted liability and whether that activity constitutes protected speech or petitioning [citation].' Each of the causes of action here asserted by the Plaintiffs is based directly upon the permitting activity relative to the development of the Wal-Mart property [citation]. None of the causes of action states a claim without referring to the application for development permit."

The court found all the causes of action were interdependent and all arose out of the development application, and the plaintiffs' signing of the authorization form, such that without the application, there would be no duties and no breaches. For example, the court reasoned, "The contract sued upon does not contain a promise to perform or not perform such vacation. As argued by Defendants, the only arguable candidate for articulating such a promise appears in the development permit application, which is a protected 'petition' activity. A lawsuit 'arises from a protected activity when the act underlying the plaintiffs' cause[s] of action is itself protected activity [citations].' "

With respect to the second prong of the anti-SLAPP statute, the court found that all the Wangs' claims were woefully insufficient as to pleading and evidentiary support, and it outlined this ruling as to each cause of action. The demurrers were deemed to be moot. Attorney fees and costs were awarded in the amount of $66,823.90 to Wal-Mart and the City. Hall et al. received an award of $13,755. LSA was awarded $31,878.42.

The Wangs appeal all rulings on the motions and the fees requests.

## DISCUSSION

## I

## INTRODUCTION AND STANDARDS OF REVIEW

The legislative purpose promoted by the anti-SLAPP statute is defined in subdivision (a) of section 425.16: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly."

Subdivision (b)(1) of section 425.16 implements these legislative findings, providing: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Under this statute, an " 'act in furtherance of a person's right of petition or free speech . . .' " includes, as contested here: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; . . . (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

The anti-SLAPP law involves a two-step process for determining whether a claim is subject to being stricken. In the first step, the moving defendant is required to make a prima facie showing the plaintiff's action is subject to section 425.16, by showing the defendant's challenged acts were taken in furtherance of constitutional rights of petition or free speech in connection with a public issue, as defined by the statute. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

The Wangs dispute whether the defendants have satisfied the first portion of this test, and they further object that the trial court erroneously concluded

it was not reasonably probable they would prevail on the merits at trial. (§ 425.16, subd. (b)(1).) However, this court need not reach this second prong of the analysis if the "arising from protected activity" requirement is not met. (*Equilon, supra,* 29 Cal.4th 53, 67; *Navellier, supra,* 29 Cal.4th 82, 88–89; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80–81 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*City of Cotati*).) Likewise, although a prevailing defendant on a special motion to strike is entitled to recover attorney fees and costs (§ 425.16, subd. (c)), if the trial court made an erroneous conclusion on the first step of the analysis, a fee award premised upon that analysis will also fail.

On appeal, we review de novo the trial court's ruling on the motion to strike. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 186 [6 Cal.Rptr.3d 494] (*Martinez*).) Whether section 425.16 applies to a particular complaint amounts to a legal question subject to this de novo standard of review. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906 [120 Cal.Rptr.2d 576].) "It is well established that a statute open to more than one construction should be construed so as to avoid anomalous or absurd results. [Citation.]" (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 17–18 [43 Cal.Rptr.2d 350] (*Ludwig*).)

II

*FIRST REQUIREMENT FOR STATUTORY SCHEME
APPLICATION: WHETHER THE SUBJECT CLAIMS
"ARISE FROM" PROTECTED ACTIVITY*

A

Introduction

We first address whether defendants met their threshold burden of showing the challenged causes of action "arose" from activity protected under the statute. (*Equilon, supra,* 29 Cal.4th at p. 67.) "In the anti-SLAPP context, the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier, supra,* 29 Cal.4th at p. 89.) In determining whether the initial "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

It is well established that a plaintiff will not avoid the application of the anti-SLAPP statute by disguising the pleading as a "garden variety" tort claim if the basis of the alleged liability is predicated on protected speech or

conduct. (*Navellier, supra*, 29 Cal.4th 82, 90–92.) Thus, "a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.' " (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308 [106 Cal.Rptr.2d 906].) We must examine the principal thrust or gravamen of a plaintiff's cause of action in determining whether the anti-SLAPP statute applies. (*City of Cotati, supra*, 29 Cal.4th 69, 78–79.) The applicable test is whether the allegations referring to arguably unprotected activity are only incidental or collateral to a cause of action based essentially on protected activity, and therefore we examine the principal thrust or predominant nature of the complaint to determine applicability of the anti-SLAPP statutory scheme. (*Martinez, supra*, 113 Cal.App.4th 181, 188; *Scott, supra*, 115 Cal.App.4th 404, 414; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672–673 [35 Cal.Rptr.3d 31] (*Peregrine Funding*).)

B

Development Fact Situations and Public Interest:
Section 425.16, Subdivision (e)(4)

Any analysis of the pleadings and affidavits to determine if the "arising from" requirement under this statutory scheme is satisfied will necessarily be fact-specific. We accordingly outline several similar case authorities to find the appropriate criteria against which to measure the facts. The case before us mainly deals with two particular definitional portions of section 425.16, subdivision (e), i.e. "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; [or] (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

■ With respect to the definitions under the statute of protected petitioning conduct (§ 425.16, subd. (e)), the Supreme Court clarified in *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564], that the statute's plain language means that clauses (1) and (2) of subdivision (e) do not contain any "issue of public interest" limitation. Rather, "[u]nder section 425.16, a defendant moving to strike a cause of action arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding need *not* separately demonstrate that the statement concerned an issue of public significance." (*Briggs, supra*, at p. 1123 [fn. 10 follows, disapproving several cases to the extent they stated otherwise, including

*Ericsson GE Mobile Communications, Inc. v. C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591 [57 Cal.Rptr.2d 491], and *Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713 [77 Cal.Rptr.2d 1]].)

Defendants rely on a case from this court, *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219 [132 Cal.Rptr.2d 57] (*Tuchscher*), as authority that allegations challenging large development projects that require public permits to proceed will necessarily involve petitioning conduct, and invoke matters of public interest. In that case, the plaintiff developer sued a public entity and its then-commissioner, as well as a city and a rival developer, for inducing breach of contract, intentional and negligent interference with prospective economic advantage, and violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). The developer, Tuchscher, was contending the defendant public officials interfered with the developer's exclusive negotiating agreement between itself and other entities relating to the commercial development of certain bayfront property, and this interference took place by means of communications with other public officials and the rival developer. This court held the complaint was properly stricken on the basis that the communications were made in connection with a public issue or an issue of public interest so as to fall under subdivision (e)(4) of section 425.16. The court did not rule upon the allegation that the public officials' communications were made in connection with an issue under consideration or review by a legislative, executive or judicial body, within the meaning of subdivision (e)(2) of section 425.16. There, it was not disputed that the proposed development amounted to a matter of public interest, which is a term that has been broadly construed. (*Tuchscher, supra,* at p. 1233; see *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479 [102 Cal.Rptr.2d 205] ["The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity"].)

Likewise, in *Tuchscher, supra,* 106 Cal.App.4th at page 1233, this court relied on *Ludwig, supra,* 37 Cal.App.4th 8, as supporting the conclusion that major bayfront property developments will necessarily amount to matters of public interest (see *id.* at p. 15, holding the development of a discount mall "with potential environmental effects such as increased traffic and impact[s] on natural drainage, was clearly a matter of public interest" under § 425.16].) Also in *Ludwig,* the court stated, "There is no requirement that the [protected] writing or speech be promulgated directly *to* the official body." (*Ludwig, supra,* at p. 17.)

■ We find these cases distinguishable and exercise caution in applying the analysis of *Tuchscher, supra,* 106 Cal.App.4th 1219, because the parties in our case are mainly relying on the "petitioning activity" of Wal-Mart and its associates in seeking governmental permit approvals (§ 425.16, subd. (e)(2)), and they focus to only a limited or to no extent on the "matter of public interest" ground under this statute (§ 425.16, subd. (e)(4)). There is no bright-line rule that all cases involving developments and applications for public permits always involve the type of petitioning conduct protected by the anti-SLAPP statutory scheme. Also, this is not a matter of developing scenic bayfront property, but rather involves a freeway-close shopping center in which a negative declaration was issued after environmental review under CEQA. Even though environmental considerations always apply to any form of development, there is no concession in this case, as in *Tuchscher,* that the "matter of public interest" ground protects against all allegations of this complaint, nor does that ground apply as a matter of law to this record.

C

### Communications in Connection with Issues Considered in Official Proceedings: Section 425.16, Subdivision (e)(2)

Instead, we should turn to other examples of protected "classic petitioning activity" to determine whether these defendants' activities are necessarily protected under the definition of section 425.16, subdivision (e)(2). With respect to Wal-Mart and its agents Hall et al. and LSA, the challenged conduct occurred in the course of their preparation of traffic studies and reports and the submission of permit applications to the City planning entities, all of which occurred during a pending escrow with the Wangs. The City was required to decide whether to approve them as submitted, but the City itself was not petitioning a governmental entity for any redress of grievances. To apply the statutory definition in section 425.16, subdivision (e)(2) (communications in connection with issues under consideration or review by an official body), we must keep in mind these defendants' respective roles in these transactions.

A classic example of protected petitioning activity would be the actions performed by counsel in conducting legal representation of a client in court or before administrative agencies. (*Peregrine Funding, supra,* 133 Cal.App.4th 658, 673–675.) When a plaintiff makes allegations of loss resulting from such protected activity, such as losses from the defendant law firm's conduct in delaying resolution of certain administrative investigations or lawsuits, the defendant law firm may assert the protection of the anti-SLAPP statute since those claims are based in significant part on the required protected activity. (*Peregrine Funding,* at p. 673.) In *Peregrine Funding,* the

court distinguished *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1399 [126 Cal.Rptr.2d 560] (*Gallimore*) for its holding that section 425.16 will not apply when the defendant's protected communicative acts merely constitute evidence supporting the plaintiff's claim, rather than amounting to the alleged wrongful acts themselves. (*Peregrine Funding, supra*, at p. 673.)

A further example of conduct that does not amount to protected "petitioning activity" is found in *Kajima Engineering, supra*, 95 Cal.App.4th 921, 929. There, the court was dealing with alleged fraud and breach of contract causes of action that arose from activities in the course of the defendant company's bidding and contracting practices, and not from any acts in furtherance of its right of petition or free speech. (*Id.* at pp. 929–932.) Even though the defendant was contending that the cross-complaint against it should be stricken, because it was operating to discourage the defendant from pursuing its own court action to obtain contract damages, the court found that the cross-complainant was actually basing its fraud and other causes of action upon the defendant company's business-related activities. These included acts such as "seeking to secure and working on a construction project. . . . [T]he alleged improper conduct does not arise from Kajima's petitioning activities but rather from its bidding and contracting practices." (*Id.* at p. 930.)

Specifically, in *Kajima Engineering, supra*, 95 Cal.App.4th 921, the cross-complainant based its fraud cause of action on allegations that the company had "intentionally underbid the project knowing it could not complete the work within the price submitted and later claimed additional compensation based on false and/or inflated progress payment requests." (*Id.* at p. 929.) These, and other acts such as "[t]he submission of contractual claims for payment in the regular course of business before the commencement of litigation," were deemed not to constitute acts that were made in furtherance of the right of petition or free speech within the meaning of the anti-SLAPP statute. (*Id.* at p. 932.) Rather, those allegations formed the gravamen of recognized tort claims.

In *Blackburn v. Brady* (2004) 116 Cal.App.4th 670, 676–677 [10 Cal.Rptr.3d 696] (*Blackburn*), this court rejected a defendant's effort to invoke the anti-SLAPP statutory scheme, where the defendant was arguing the plaintiff's fraud claim was impermissibly based upon a written bid at a sheriff's property auction, made purportedly without an intent to perform. We said that such a fraud cause of action did not arise from an act of free speech or right of petition for the redress of a grievance, "but rather only from [defendant's] actions which affected the bidding at a court ordered sale, which in essence is an event where offers to buy property are received according to certain requirements. Plainly, even construing the gravamen of

Blackburn's third cause of action, as Brady does, as fraud committed in his bidding at the sheriff's auction, it is a purely business type event or transaction and is not the type of protected activity contemplated under section 425.16, subdivision (e). [Citations.]" (116 Cal.App.4th at pp. 676–677.)

■ In reaching this conclusion in *Blackburn, supra*, 116 Cal.App.4th at pages 677, we relied on authority that "section 425.16 'does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding. The statements or writings in question must occur in connection with "an issue under consideration or review" in the proceeding.' [Citations.] [¶] The ministerial event of a Sheriff's sale or auction simply does not concern an issue under review or determine some disputed matter as contemplated under the anti-SLAPP law. Rather, as already noted, it consists merely of offers and the acceptance of the highest bid made according to certain requirements without any determination based on the exercise of one's free speech or petition rights. As such, it concerns a business dealing or transaction somewhat analogous to the unprotected activity of bidding on public contracts in *Kajima [Engineering], supra*, 95 Cal.App.4th 921, and not the exercise of protected activity under section 425.16."

The case before us is similar in some ways to a products liability/personal injury case, *Scott, supra*, 115 Cal.App.4th 404, 417–418, in which this court rejected the defendant manufacturer's contention that the plaintiff was claiming injuries that arose only out of protected advertising activities or representations about the product. This court distinguished between "the method of proof [plaintiff] will use to demonstrate [the] product is defective with [defendant's] conduct from which these causes of action arise." (*Id.* at p. 417, citing *Gallimore, supra*, 102 Cal.App.4th at pp. 1392, 1399 [plaintiff's causes of action for unfair business practices against insurer, based on a Department of Insurance investigation, arose out of underlying claims-handling violations, not any communication between defendant and the Department of Insurance about the claims process].)

In both *Scott, supra*, 115 Cal.App.4th 404 and *Gallimore, supra*, 102 Cal.App.4th 1388, the reviewing courts rejected contentions by the defendants that the injured plaintiffs were relying solely on protected communications for their claims. Instead, those courts both compared the " '[defendant's] allegedly *wrongful acts* with the *evidence* that plaintiff will need to prove such misconduct. Plaintiff seeks no relief from [defendant] for its communicative acts, but rather for its alleged mistreatment of [customers] . . . .' " (*Scott, supra*, at p. 417.)

In light of these comparable situations, we next consider the allegations as to the various sets of defendants, separately.

## D

### Issues Regarding Wal-Mart and the City

The trial court ruled that all the breach of contract and fraud claims were based directly upon governmental permitting activity, within the definition of section 425.16, subdivision (e)(2) ("any written or oral statement or writing made in connection with an issue under consideration or review by a [public] body, or any other official proceeding authorized by law"). To decide whether the Wangs' allegations are based essentially on protected activity, or alternatively refer to petitioning activity that is only incidental or collateral to the main thrust of the complaint, we evaluate the record of this complex business transaction that involved both private agreements and representations among the parties, along with essential applications for governmental permits to proceed with the development. We look to whether defendants' acts underlying plaintiffs' causes of action were themselves acts carried out "in furtherance of the right of petition or free speech." (*City of Cotati, supra*, 29 Cal.4th 69, 78.)

Several factors lead us to conclude this complaint is not based essentially on protected conduct, but rather upon acts that were not carried out in furtherance of First Amendment rights. Beginning in 1999–2000, and extending until the close of escrow in April 2002, the Wangs, Wal-Mart and defendant consultants worked together on a common goal, to close the sale, with the parties cooperating with the requirements of the purchase agreement, in light of the desired development of the property. As is normal in the modern city-planning world, the phases of this process included extensive revising and changing of the professional studies and plans for the properties, in response to governmental land use controls and permitting requirements. The purchase contract anticipated that the parties would have to obtain any required documents to accomplish the transaction, which included the necessary discretionary and ministerial public approvals and permits for construction of a commercial retail center, together with the vacation of such portion of McArthur Boulevard as the purchaser approved.

In contrast to a case such as *Tuchscher, supra*, 106 Cal.App.4th 1219, this case does not hinge upon the "public interest" in proposed developments, within the meaning of section 425.16, subdivision (e)(4). Instead, as already stated, the applicability of the anti-SLAPP statutory scheme is not so clear, since this project resulted in the issuance of a negative declaration under CEQA, and that aspect of environmental review does not necessarily or as a matter of law qualify development of this roadside property, for commercial purposes, as a "matter of public interest," at least as that concept is defined for speech and petitioning conduct in the anti-SLAPP context.

For purposes of interpreting section 425.16, subdivision (e)(2), our focus should be upon the moving parties' activities that were carried out in the course of satisfying the conditions of the contract and performing it, which activities included Wal-Mart's business practices as a developer in obtaining the necessary governmental permission to build the shopping center. As in *Kajima Engineering, supra,* 95 Cal.App.4th 921, 929, those business-related activities are described in the complaint as giving rise to recognized tort claims, because of the manner in which Wal-Mart allegedly sought to secure and implement plans for its construction project, allegedly to the detriment of the Wangs. Such alleged improper conduct does not arise from defendants' petitioning activities in pursuing the permits, but rather from its conduct in carrying out its contractual duties, seeking to extend escrow, requesting the execution of documents, and other practices within the scope of the parties' contractual relationship. (*Id.* at p. 930.)

Also as in *Blackburn, supra,* 116 Cal.App.4th at pages 676 to 677, these permit applications were made according to certain requirements imposed by a public entity, but they do not principally concern an issue under official review that required a determination to be based upon the exercise of anyone's free speech or petition rights. Rather, the Wangs and Wal-Mart engaged in business dealings or transactions, in which their contractual dealings and extracontractual activities (allegedly fraudulent) form the gravamen of the principal allegations. No issues are now before us about whether any extrinsic evidence will be allowed to clarify the contractual intent of the parties. (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904 [75 Cal.Rptr.2d 573].) Nor can we now resolve the issue of whether Wal-Mart waived the satisfaction of any conditions regarding the freeway locations, as plaintiffs now interpret the first amendment to the escrow conditions. Further, any admissibility of extrinsic evidence on a fraud theory also remains undetermined. (§ 1856, subd. (g).)[4]

Here, as in *Scott, supra,* 115 Cal.App.4th 404 and in *Gallimore, supra,* 102 Cal.App.4th 1388, we cannot say as a matter of law that these plaintiffs are relying solely or principally upon protected communications for stating their claims. Instead, the Wangs should be able to plead *wrongful acts* by defendants, and then attempt to prove them with *evidence* about alleged misconduct that occurred behind the scenes, during the period of escrow, that was not primarily directed toward and did not exclusively constitute any communicative acts to a public agency, during the permitting process. By analogy, this complaint can be viewed as alleging defendants were developing a product, and in the process, committed unprotected tortious acts or breaches of

---

[4] Although the parties raise an additional argument on appeal about whether, under the purchase agreement, certain underlying property should revert to the Wangs after abandonment of the subject streets, the merits of that dispute are not now before us.

contract. (*Scott, supra*, at pp. 417–418.) We seek to construe the statute to implement the proper purposes and to avoid an anomalous result. (*Ludwig, supra*, 37 Cal.App.4th at pp. 17–18.)

We therefore disagree with Wal-Mart and its fellow defendants that if all references in the pleading to the development application and related permits were removed, no colorable allegations of breach of contract, fraud, or breach of fiduciary duty would be left (or the remaining theories). We believe that a fair reading of the allegations about the acts underlying plaintiffs' causes of action leads to a conclusion that plaintiffs are relying on acts that Wal-Mart carried out in furtherance of its economic interests in implementing the contractual agreement, in order to utilize the property that was still in escrow, with the Wangs as nominal owners or titleholders. The requests to governmental authorities for approval of land use planning items were made only in conjunction with the principal business transaction. The overall thrust of the complaint challenges the manner in which the parties privately dealt with one another, on both contractual and tort theories, and does not principally challenge the collateral activity of pursuing governmental approvals. (See *City of Cotati, supra*, 29 Cal.4th 69, 78.) The statutory scheme does not support the orders striking the complaint as a whole.

Likewise, with respect to the allegations against the City for inverse condemnation and declaratory relief, even though the Wangs' claims referred to the applications for development permits, the critical consideration remains whether the causes of action are mainly based on the City's activity that gave rise to the asserted liability. (*Navellier, supra*, 29 Cal.4th 82, 89, 92.) It is difficult to compare the City's alleged inverse condemnation activities, such as preparing and revising staff reports and approving the request to vacate the streets, to a private or corporate defendant's protected free speech or petitioning activity in seeking such approvals. (See *Tuchscher, supra*, 106 Cal.App.4th 1219, 1232.) Even if the main focus remains on Wal-Mart's activities in seeking to have the street vacated, allegedly without proper notification to the Wangs, those are still predominantly private business-oriented activities that gave rise to the asserted contractual or tort liability. The liability theory is the loss of property value, allegedly caused by breach of contract or fraud (or inverse condemnation), rather than damages caused by any protected activity involving speech or petitioning the government.

■ With respect to both Wal-Mart and the City, we conclude the Wangs' causes of action raised only collateral or incidental facts with respect to any conduct falling within the applicable definition in the anti-SLAPP statutory scheme ("any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial

body, or any other official proceeding authorized by law" [§ 425.16, subd. (e)(2)]). The trial court erroneously granted the motion under the first prong of the analysis.

E

Issues Regarding Hall et al.; LSA

During escrow, the Wangs authorized the filing of an authorization form for the development application to the City, and this form appointed Hall et al. as the applicant to represent the owners' interest in connection with the development application. Plaintiffs now contend that Hall et al. as their agents breached fiduciary duties and conspired to defraud them.

In response, Hall et al. object that they never dealt personally with the Wangs and instead were dealing with Wal-Mart. They allege, along with Wal-Mart, that the claims against them arose solely from the representations contained in the development application, which in and of themselves must amount to petitioning activity to the government. However, the acts underlying plaintiffs' cause of action as to Hall et al. were acts taken in plaintiffs' name, as their representatives, in pursuing private property development as anticipated by the purchase agreement. Even though the purchase agreement contained conditions stating that appropriate governmental approvals and permits would be obtained in the normal course, the Wangs' allegations against Hall et al. are not based upon those contractual conditions. Plaintiffs instead are alleging defendants failed to disclose known material information that affected the Wangs' economic interests, at a time when there was a duty to disclose such information. The participation of Hall et al. in the development application process was carried out in their normal course of business and presumably for compensation, and even those commercial speech activities could conceivably be considered to be not protected conduct but circumstantial evidence of the alleged conspiracy. (*Ludwig, supra*, 37 Cal.App.4th at p. 18; *Gallimore, supra*, 102 Cal App 4th 1388, 1399.)

Similarly, with respect to the subconsultant LSA, which prepared the traffic study, its activities in preparing the project for City approval cannot properly be characterized as principally or predominantly done in pursuit of any protected conduct as defined by section 425.16, subdivision (e). Rather, the Wangs are attempting to allege conspiracy to defraud by LSA's withholding of material facts from plaintiffs with regard to Wal-Mart's and its agents' true intentions and plans for the development, while under a duty to disclose, particularly regarding the traffic pattern. At this time, on the existing record, we conclude the trial court erroneously granted the special motions to strike, as well as the related requests for attorney fees. The Wangs' causes of action

raised only collateral or incidental facts touching upon any conduct falling within the subject definition in the anti-SLAPP statutory scheme ("any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" [§ 425.16, subd. (e)(2)]). The trial court erred in granting this portion of the motions.

## III

### *REMAINING ISSUES*

Because of the conclusions we have reached regarding the first prong of the anti-SLAPP analysis, we need not proceed to evaluate whether plaintiffs adequately showed a probability of prevailing in the action. (§ 425.16, subd. (b)(1).) We also need not decide the issues raised on appeal regarding alleged abuse of discretion by the trial court in denying discovery or in allowing the joinders in the motions. (§ 425.16, subds. (f), (g).)

With respect to the demurrer rulings, various defendants now argue that the trial court's comments at oral argument about its tentative rulings conclusively resolved the demurrer issues, by finding the various causes of action were poorly pled. At that hearing, plaintiffs made several suggestions about how they could amend their complaint (such as promissory estoppel). However, the written ruling itself states that the demurrers were moot in light of the other rulings, and we cannot treat the oral demurrer rulings as having been finalized. Those issues have not been substantively argued here, nor does the record contain all of those papers. Moreover, demurrers address questions of law, whereas the motion to strike is decided not only on the pleadings but also on affidavits.

At this time, we express no opinion on the relative merits of the various parties' claims and defenses, but instead determine only that the orders must be reversed and the matter returned to the trial court, with directions to deny the special motions to strike the complaint as to all defendants, as well as their requests for attorney fees. The trial court shall allow any appropriate further proceedings that are not confined to the anti-SLAPP statutory scheme, and which may include any appropriate applications to amend the complaint or to renew the demurrers if no leave to amend has been granted.

## DISPOSITION

The orders granting the motions to strike and awarding attorney fees and costs are reversed with directions to enter new orders denying the motions,

and to allow further appropriate proceedings in accordance with the views expressed in this opinion. Costs to appellants.

McConnell, P. J., and Benke, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 17, 2007, S155991. George, C. J., did not participate therein.