Filed 6/30/15  Lira v. Nick Pacheco Law Group CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CARLOS LIRA, | B257882 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BC474837) |
| NICK PACHECO LAW GROUP, APC, | |
| Defendant and Appellant. | |
| ROCIO LIRA, | (Los Angeles County Super. Ct. No. BC475028) |
| Plaintiff and Respondent, | |
| v. | |
| NICK PACHECO LAW GROUP, APC, | |
| Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County.  Robert L. Hess, Judge.  Affirmed.

Law Offices for Michael Poole and Michael Poole for Defendant and Appellant.

Fraigun Law Group and Marina Kats Fraigun for Plaintiffs and Respondents.

_____

Plaintiffs, husband and wife Carlos and Rocio Lira, separately sued their former employer, defendant Nick Pacheco Law Group, APC (and other affiliated individuals and entities who are not parties to this appeal), alleging causes of action related to their employment and termination of employment. Plaintiffs' nearly identical pleadings alleged that defendant failed to pay all of their wages, unlawfully pressured them to make campaign contributions (which later became the subject of an investigation by the Los Angeles City Ethics Commission), made racially charged statements to plaintiffs, and engaged in questionable legal practices in servicing its clients. Plaintiffs were terminated after they complained about this conduct, and defendant defamed them to their prospective employer.

Defendant filed special motions to strike a majority of plaintiffs' claims under Code of Civil Procedure section 425.16,[1] contending that the statements to plaintiffs' prospective employer were made in anticipation of litigation, and that the remainder of the claims arose from defendant's protected activity in representing its clients, and in connection with the Ethics Commission investigation. Defendant also adduced evidence that plaintiffs were terminated because they falsified Rocio's employment verification forms, and therefore the termination resulted from defendant's effort to comply with federal immigration law.

The trial court denied defendant's motions, and defendant appealed. Finding no merit in any of defendant's contentions, we affirm.

## FACTS

Plaintiffs alleged causes of action for: (1) breach of express contract; (2) breach of implied in fact contract; (3) fraud; (4) conspiracy; (5) intentional misrepresentation; (6) breach of the covenant of good faith and fair dealing; (7) national origin discrimination and harassment; (8) failure to prevent harassment and discrimination;

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

(9) intentional infliction of emotional distress; (10) wrongful termination in violation of public policy (for plaintiffs' complaints about racial discrimination); (11) retaliation (for plaintiffs' complaints about racial discrimination); (12) failure to pay earned wages; (13) retaliation (in violation of Labor Code section 1102.5, barring retaliation against employees for their refusal to participate in illegal activity); (14) retaliation (in violation of section 98.6, barring retaliation against employees seeking unpaid wages); (15) waiting time penalties; (16) defamation; (17) invasion of privacy; (18) negligent interference with prospective economic advantage; (19) intentional interference with prospective economic advantage; (20) violation of section 1050 (making it a misdemeanor to prevent a former employee from obtaining employment by making misrepresentations); and (21) violation of section 1102 (making it unlawful to coerce the political activities of employees).

The following facts are taken from the plaintiffs' operative complaints (Carlos's second amended complaint and Rocio's third amended complaint): Defendant law firm represented homeowners in foreclosure proceedings. In March 2010, defendant offered plaintiffs employment with its law firm. Because plaintiffs were already employed elsewhere, they required certain assurances before they would consider working for defendant. Defendant agreed to pay plaintiffs a salary, bonuses, a portion of defendant's profits, and agreed that plaintiffs' employment would not be at-will and could only be terminated for good cause. Plaintiffs began working for defendant in March 2010, providing customer service and office management services. Almost immediately, defendant failed to pay the agreed salary, bonuses, and profits, notwithstanding plaintiffs' exemplary job performance.

Over the course of plaintiffs' employment, defendant engaged in some disturbing practices. Defendant formed partnerships with nonlawyers in violation of the California Rules of Professional Conduct. Also, on August 20, 2010, defendant's employee, defendant Juan Jaramillo, demanded that plaintiffs contribute $500 to Rudy Martinez's City Council campaign, promising to reimburse the contributions. Plaintiffs were only partially reimbursed, were later pressed for additional contributions, and were threatened

3

with termination if they did not contribute.  Defendant was investigated by the Ethics Commission and the Los Angeles District Attorney in connection with campaign contributions made by its employees.

Defendant's nonlawyer sales staff improperly gave legal advice to clients and falsely promised that their homes could be saved from foreclosure.  Defendant's lawyers often failed to appear at court hearings for their clients.

Defendant also failed to pay plaintiffs and other staff members overtime wages.

Additionally, defendant's employees made derogatory remarks about plaintiffs' national origin, and threatened to report Rocio to immigration.

When plaintiffs complained about defendant's conduct, Carlos received a negative performance review, and both plaintiffs were ultimately terminated on December 8, 2010.

After plaintiffs were terminated, Nick Pacheco wrote to attorney Robert Kayvon, plaintiffs' prospective employer, falsely accusing plaintiffs of hacking defendant's computers, stealing defendant's trade secrets, slandering defendant, and falsely claiming that plaintiffs had a history of "going after" past employers.  Pacheco also told Kayvon and others that Rocio was terminated for providing false work eligibility documents. Defendant's statements caused Kayvon not to hire plaintiffs.

Defendant moved to strike the first, second, sixth through eleventh, thirteenth and fourteenth, and sixteenth through twenty-first causes of action in the operative complaints.  Defendant argued that the contract, retaliation, and Labor Code sections 1101 and 1102 claims all arose from protected activity because they were connected to "an issue under consideration or review by official proceeding authorized by law:  [the] Los Angeles City Ethics Commission investigation" because plaintiffs were purportedly terminated in connection with their complaints to the Ethics Commission.

Defendant also contended that plaintiffs were terminated for falsifying employment eligibility documents, and that "[plaintiffs] placed [defendant] in the position of submitting a false I-9 Form and filing inaccurate returns with the Internal Revenue Service and the Social Security Administration all of which are protected activity. . . ."

4

Defendant also argued that to the extent plaintiffs' claims concerned defendant's legal representation of its clients, defendant's representation of its clients constituted protected petitioning activity.

Lastly, defendant contended these claims involved a matter of public interest, e.g., political campaign contributions for a candidate for public office.

Defendant also contended that the claims for defamation, invasion of privacy, negligent and intentional interference with prospective economic relations, and the Labor Code section 1050 claim all arose from Pacheco's letter to attorney Robert Kayvon, and therefore arose from protected activity as the letter was sent in anticipation of litigation.[2]

In support of the motions, defendant submitted a declaration by Nick Pacheco averring that plaintiffs were terminated for falsifying Rocio's employment verification documents. The declaration also stated that plaintiffs were at-will employees. Pacheco denied that he pressured plaintiffs to make any campaign contributions, and authenticated a stipulation of Juan Jaramillo and the Los Angeles Ethics Commission for entry of an order. The stipulation provided that an investigation by the Ethics Commission revealed that Jaramillo partially reimbursed 11 of defendant's employees (including plaintiffs) for campaign contributions to Rudy Martinez. Jaramillo was ordered to pay a fine, as this conduct violated campaign finance laws. Pacheco averred that Jaramillo was not a firm employee, but was an "independent contractor responsible for the marketing efforts to generate clients . . . ."

---

[2] Carlos's original complaint alleged that defendants also made false reports to the California Employment Development Department (EDD) to prevent Carlos from receiving unemployment benefits; however, these allegations were omitted from the operative complaint. Nevertheless, defendant's motion argued that to the extent that Carlos's defamation claim *may* be based on statements made to the EDD, the claim arises from protected activity, as it concerns statements made in connection with an official proceeding.

5

Pacheco also authenticated the letter he sent to Robert Kayvon. The letter stated "I am writing this letter to you as a professionall [*sic*] courtesy and to make you aware of some very disturbing information. [¶] It has come to my attention that some of my former employees appear to be using your name to drum up business for themselves. . . . Mrs. Rodolfo Jimenez was contacted by a woman named Rocio to recommend you as an attorney that could help her with her mortgage loan problems." According to the letter, Mrs. Jimenez was not a client of Pacheco's office, as his client intake staff had deemed her unsuitable because she had a pending trustee's sale. Rocio falsely told Mrs. Jimenez that Pacheco was under investigation by the Attorney General's office, that former clients were suing Pacheco, and that Pacheco "was a fraud." Mrs. Jimenez's contact information "was confidentially maintained in [defendant's] phone database. At this moment I am working with the appropriate information technology personnel to determine how my business database was hacked. I am also looking into the illegalities involved with corporate theft of trade secrets (i.e., client lists and/or contact information)." Pacheco's letter stated his view that Carlos had unlawfully accessed defendant's databases.

The letter went on to include a lengthy discussion (with appended exhibits) about Carlos Lira's past, asserting Carlos had lost his real estate license in Utah for "fraudulent loan transactions"; that Carlos "has a history of going after prior employers"; that Carlos had slandered Pacheco to an employee at another law office by falsely stating that "[he] was more concerned about playing golf than [his] clients." Pacheco also represented that Carlos "is being sued for fraud in Los Angeles County and I am trying to track that case down."

Pacheco's letter also reported that plaintiffs "are going around trying to incite a lawsuit against me from former clients." The letter continued, "On a separate note, since you have your own business you should also know that Rocio Lira was unable to provide employment eligibility documents for the Department of Homeland Security Form I-9. I share this with you so that you take the necessary steps to protect yourself from any unintended consequences."

The letter concluded, "Once again, I share all this with you as a professional courtesy to make sure that you know your name is being used to drum up business. Also, you should know that I am exploring all my legal options to protect my clients' interests from my former employees."

Plaintiffs' oppositions[3] argued that defendant had not made the required prima facie showing, and that in any event, there was a reasonable probability they would prevail on the merits of their claims. Specifically, plaintiffs argued that the gravamen of their claims was defendant's wrongful and retaliatory employment practices, and not any protected activity. Both plaintiffs provided declarations detailing defendant's conduct, and the damages they had suffered as a consequence. Plaintiffs also argued they were entitled to recover their attorney fees in defending the motions, reasoning they were frivolous. Their oppositions included declarations from their attorney detailing the legal fees which had been incurred. No reply papers were filed.

The trial court denied the motions, finding that defendant had not made the required prima facie showing. The trial court also concluded that the motions were frivolous, reasoning that under no circumstances was "firing the plaintiffs" protected activity, and that any protected activity in the complaints, such as plaintiffs' reports of wrongdoing to the Ethics Commission, was protected activity attributable to *plaintiffs* and not to defendants. The trial court indicated that it would decide the amount of fees recoverable by separate motion, and plaintiffs' appellate briefs indicate that that motion has been heard, and taken under submission. These timely appeals followed, which we have consolidated for purposes of oral argument and decision.

---

[3]    The appellate record filed by defendants did not include plaintiffs' opposition papers. Plaintiffs filed them with their motions to augment the record on appeal, which we hereby grant.

## DISCUSSION

### 1. Standard of Review

A defendant may bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) The trial court rules on a SLAPP[4] motion using a two-step process. First, it looks to see whether the defendant has made a prima facie showing that the challenged causes of action arise from protected activity. (§ 425.16, subd. (b)(1).) Next, if the defendant makes this threshold showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claims. (*Ibid.*; see *Taus v. Loftus* (2007) 40 Cal.4th 683, 712.) In making both of these determinations, the trial court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) In assessing the second prong, the court looks to admissible evidence. (*Brill Media Co., LLC v. TCW Group, Inc.* (2005) 132 Cal.App.4th 324, 329, disapproved on other grounds by *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 25, fn. 3.) Our review on appeal is de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

### 2. Adequacy of the Appellate Record

As an initial matter, we note that defendant failed to provide an adequate record on appeal. Omitted from the record designated by defendant are plaintiffs' oppositions to defendant's motions. "[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." (*Mountain Lion Coalition v. Fish & Game Commission* (1989) 214 Cal.App.3d 1043, 1051.) Nevertheless, because plaintiffs have furnished their oppositions, and sought to augment the record to include them, we turn to the merits of defendant's claims on appeal.

---

[4] SLAPP is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53; 57, fn. 1 (*Equilon Enterprises*).)

### 3. Protected Activity

The defendant is required to make a prima facie showing that one or more causes of action arise from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue. (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67.) The defendant meets this burden by demonstrating that the plaintiff's claims arise from "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) The defendant need not prove that the challenged conduct is protected by the First Amendment as a matter of law. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80 (*City of Cotati*).) And, arguments about the merits of the claims are irrelevant to the court's analysis in the first step. (*Freeman v. Schack* (2007) 154 Cal.App.4th 719, 733 [it is irrelevant that defendant might prevail on the merits of the claims where defendant cannot meet the first prong of the anti-SLAPP analysis].)

Section 425.16, subdivisions (e)(1) and (e)(2) "encompass[] any cause of action against a person arising from any statement or writing made in, or in connection with an issue under consideration or review by, an official proceeding or body." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113.) Courts have broadly construed the definition of litigation-related activity under section 425.16. (See *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) Communications preparatory to or in anticipation of litigation or other official proceedings are within the scope of protected activity. (*Briggs*, *supra*, p. 1115.) "[A]lthough litigation may not have commenced, if a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation

9

"contemplated in good faith and under serious consideration" ' [citation] then the statement may be petitioning activity protected by section 425.16." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268.)

In deciding whether a complaint arises from defendant's protected activity, courts do not look to "the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 (*Navellier*).) "[T]he mere fact that an action was filed after protected activity took place does not mean it arose from that activity." (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 66.) Nor does the fact "[t]hat a cause of action arguably may have been triggered by protected activity" necessarily mean that it arises from such activity. (*City of Cotati*, *supra*, 29 Cal.4th at p. 78.) In the anti-SLAPP context, the crucial determinant is "whether the cause of action is *based on* the defendant's free speech or petitioning activity." (*Navellier*, at p. 89.) "[T]he defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati*, at p. 78.) Where the protected activity will only be used as evidence in the case, and no claim is based on it, the protected activity is only incidental to the claims. (*Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 809-810.) Courts focus on the substance or gravamen of the plaintiff's lawsuit to make this determination. (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 669-670.)

Defendant contends that plaintiffs' claims arise from protected activity under subdivisions (e)(1), (e)(2), and (e)(4) of section 425.16, reasoning that these claims "are entirely dependent on activity which was made in connection with an issue under consideration or review by official proceeding authorized by law: in this case Los Angeles City Ethics Commission investigation and Defendants efforts to comply with the Immigration Reform and Control Act of 1986 (ICRA) which requires employers refrain from knowingly hiring or continuing to employ unauthorized aliens is protected conduct and speech." Defendant contends that to the extent plaintiffs' claims arise from defendant's legal representation of its clients, this constitutes protected petitioning

10

activity. Defendant also argues that plaintiffs' claims concern matters of public interest, because the "claims arise from political campaign contributions for a candidate to a public office . . . which is clearly a matter of public interest."

We are not persuaded. The conduct underlying these claims is defendant's *termination* of plaintiffs in retaliation for plaintiffs' complaints about defendant's wrongdoing. (*Navellier*, *supra*, 29 Cal.4th at p. 89; *City of Cotati*, *supra*, 29 Cal.4th at p. 78.) Although the ethics investigation, the competency of defendant's legal representation of its clients, and Rocio's employment eligibility may be *evidence* in plaintiffs' case, or provide a defense to plaintiffs' claims that their termination was unlawful, under no circumstances are plaintiffs' claims based on any of this conduct. (*Wang v. Wal-Mart Real Estate Business Trust*, *supra*, 153 Cal.App.4th at pp. 809-810.) This case involves garden-variety wrongful termination, retaliation and discrimination claims; defendant's termination of plaintiffs is not somehow catapulted into protected activity because it occurred contemporaneously with an investigation by the Ethics Commission; or because it occurred in retaliation for *plaintiffs'* whistleblowing activity; or because plaintiffs allegedly caused defendant to make false filings to the IRS or Social Security Administration. None of *plaintiffs'* claims are based on this conduct.

As to the claims arising from Pacheco's letter to Kayvon, defendant failed to make the required prima facie showing that the letter was written in anticipation of litigation, contemplated in good faith.[5] (*Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at p. 1268.) Although the letter represented that "I am exploring all my legal options to protect my clients' interests from my former employees," this is not enough. The declaration which

---

[5] Defendant argues on appeal that the trial court did not consider Pacheco's declaration and exhibits when ruling on defendant's motions. Defendant does not cite to any portion of the record where this is evident, and we can find no such ruling. We are not required to make an independent search of the record and may disregard any claims when no appropriate reference is furnished. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

authenticated the letter was silent about any anticipated litigation. Moreover, there was no evidence that litigation was ever commenced from which we could reasonably infer that litigation was anticipated at the time the letter was drafted.

Defendant's cited authorities do not persuade us otherwise. (See *Neville v. Chudacoff*, *supra*, 160 Cal.App.4th at pp. 1258-1259 [the letter that formed the basis of the challenged claim clearly stated that litigation was contemplated, and a lawsuit was commenced a matter of months after the communication was sent that related to the matters addressed by the letter]; *Contemporary Services Corporation v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1054-1055 [claim based on communications made during the *pendency* of litigation that clearly related to the litigation]; *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482, 489 [same]; see also *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 780 [claims based on letter by a law firm soliciting celebrities to support an effort to file a complaint against the defendant, a publishing firm, for the defendant's alleged failure to pay royalties on audio recordings by celebrities to charities designated by those celebrities].) In all of these cases, litigation had already commenced, or there was a very real threat of litigation, which was evidenced by the parties' declarations in support of their motions, or from the communications themselves. (*Contemporary Services Corporation*, at pp. 1054-1055.) Such is not the case here.

Lastly, concerning defendant's argument that any statements made to the EDD constituted protected activity, we note that the operative pleadings make no allegations about the EDD, and therefore, any statements to the EDD are not implicated here, and are not the proper subject of defendant's motions. (See, e.g., *JKC3H8 v. Colton* (2013) 221 Cal.App.4th 468, 479.)

## DISPOSITION

The orders are affirmed. Respondents are to recover their costs on appeal.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.                    FLIER, J.

12