Filed 1/8/16  Central Metal v. Center Bank CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CENTRAL METAL et. al.,<br><br>　　　　Plaintiffs and Appellants,<br><br>　　v.<br><br>CENTER BANK,<br><br>　　　　Defendant and Respondent. | B258844<br><br>(Los Angeles County<br>Super. Ct. No. BC532269)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

　　　　The opinion filed on December 16, 2015, is modified as follows:  On page 1, line 5, "Bradley S. Pauly" is deleted and "Bradley S. Pauley" is inserted in its place.

　　　　No change in judgment.

_____

BAKER, J.　　　　　　　　TURNER, P.J.　　　　　　　　KRIEGLER, J.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| CENTRAL METAL et. al., | B258844 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC532269) |
| v. | |
| CENTER BANK, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debre Katz Weintraub, Judge.  Affirmed.

Daniel E. Park Law Corporation, Daniel E. Park and Christopher C. Cianci, for Plaintiffs and Appellants.

Horvitz & Levy, Jeremy B. Rosen and Bradley S. Pauly; Buchalter Nemer, Jeffery S. Wruble and Jack R. Scharringhausen, for Defendant and Respondent.

Plaintiffs Central Metal, Inc. and Jong Byun (together referred to as Central Metal) defaulted on loans they obtained from Center Bank. Center Bank successfully sought court appointment of a "rents, issues and profits" receiver based on Central Metal's default, and Central Metal filed for bankruptcy in an effort to forestall the receivership action. Roughly four years later, Central Metal sued Center Bank for losses suffered as the result of the bank's receivership action and the subsequent bankruptcy. The bank responded by filing an anti-SLAPP motion, which the trial court granted as to all but one cause of action in Central Metal's complaint. We are asked to decide (1) whether Central Metal's causes of action against Center Bank arise from the bank's protected litigation activity and (2) whether Central Metal established a probability of prevailing on its causes of action notwithstanding the applicable statutes of limitation.

BACKGROUND

Central Metal is a family-owned corporation based in Huntington Park. It has been in the scrap metal business since 1993. The Bank[1] is the primary financial institution that Central Metal used since the company's inception.

In 2006 and 2007, Central Metal obtained a series of commercial loans from the Bank totaling $16.7 million.[2] The loans were secured by deeds of trust on Central Metal's real property and personal property liens against the company's assets. Three of the loans, in the total principal sum of $15,000,000, had terms of five years each. The other three loans, amounting to $2,000,000 in principal, were set to mature four to six months after funding.

---

[1] Center Bank and Nara Bank merged in 2011. The merged bank continued operations under the name BBCN Bank. We refer to Center Bank and its successor-in-interest, the defendant and respondent herein, as "the Bank."

[2] Plaintiff Jong Byun and his wife were co-borrowers with Central Metal on two of these loans, representing $14 million in borrowed funds.

2

Central Metal experienced cash flow problems in late 2008 due to a sharp decline in scrap metal prices. The Bank agreed to extend the maturity dates on the three smaller loans to May 2009. Central Metal, however, failed to pay off those loans as agreed and also stopped making payments on the other three larger loans. The Bank issued Notices of Default & Acceleration in June 2009, which stated that the Bank would sue to enforce the loan agreements unless Central Metal immediately cured its defaults.

Not long thereafter, in July 2009, Central Metal and the Bank entered into Deferment Agreements. With respect to the three loans totaling $15 million that had not yet matured, the parties agreed to defer all payments due between May and August 2009, with normal payments to resume in September. In addition, the parties executed a Change in Terms Agreement which extended the maturity dates of the three smaller loans to September 1, 2009. According to Central Metal's complaint, "Although the loan payments were to be deferred, [the] Bank indicated to Plaintiffs that everything was fine."

Central Metal failed to make the payments required by the parties' Deferment Agreements. The Bank reacted by recording a Notice of Default on the real property securing one of the three larger loans.

On October 19, 2009, the Bank sent Central Metal a Notice of Default & Acceleration Letter, stating that the borrowers were in default on all of their loans and the Bank had accelerated the amounts due, such that the loans were immediately due and payable. The letter specified the principal, interest, and late fees due on each of the six loans, and stated that "[u]nless the accelerated balance is paid off immediately, the Bank will not stop to pursue legal remedies" and "we will continue to take such legal steps despite any occasional payments you may make until the balance is paid off."

In response to the notices of default, Central Metal again sought to modify the loans' payment terms, proposing six months of interest-only payments followed by a return to regularly scheduled principal and interest payments. The Bank suggested Central Metal hire an independent consultant to verify the company's cash-flow

3

projections in support of its loan modification proposal. Central Metal agreed and retained Focus Management (Focus), the consulting firm specifically recommended by the Bank.[3] Soon after Central Metal retained Focus, Focus informed the Bank of concerns Focus harbored concerning Central Metal's financial practices. More specifically, Focus told the Bank that there was $17 million in cash that Focus could not account for, and that Jong Byun had offered a cash bribe to Focus.

The Bank rejected Central Metal's proposed loan modification by letter dated November 16, 2009, based on its assessment that Central Metal's past and projected sales figures did not support the proposed repayment plan. The letter included notice that the Bank would pursue its legal remedies, including seeking a receivership.

On January 6, 2010, the Bank sued Central Metal for failure to perform its obligations under the loan documents. The Bank requested the appointment of a receiver with respect to the real property securing the loans. The court appointed Robert Riiska, a principal of Focus, as receiver.

Central Metal responded to the Bank's lawsuit by filing a Chapter 11 bankruptcy petition. In that petition, the company stated that its inability to meet its debt obligations was the result of a marked drop in demand for steel coupled with an increase in the cost of scrap metal and the limited functionality of equipment it had newly acquired. Central Metal sought to sell "some or substantially all of its assets, locate a financial partner, or pursue a plan of reorganization." The Bank moved for appointment of a bankruptcy examiner to investigate the diversion of funds and inventory from Central Metal. However, before the motion was heard, the Bank sold its interest in the loans to a third party.

Nearly four years later, on January 3, 2014, Central Metal sued the Bank. Central Metal's First Amended Complaint (the complaint) alleges causes of action for fraud, negligence, negligent misrepresentation, intentional and negligent interference with

---

[3]     As we explain, *post*, Central Metal's complaint alleges that the Bank foisted Focus on Central Metal as part of a plan to collude with Focus and seize Central Metal's assets.

prospective economic advantage, unfair business practices, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, civil conspiracy, and negligent and intentional infliction of emotional distress. The complaint alleges that, in the fall of 2009, the Bank was in dire financial straits and needed to raise large sums of money in order to avoid being seized by the Federal Deposit Insurance Corporation. The complaint further alleges that the Bank engaged in a scheme to seize the assets of Central Metal by verbally assuring Central Metal that its loan obligations would be restructured and payments deferred; "insist[ing] and requir[ing]" that Central Metal retain Focus; and conspiring with Focus to create inaccurate and misleading reports, which the Bank then used "to take possession of Plaintiffs' business." According to the complaint, the Bank carried out the alleged scheme by filing the receivership action, which in turn left Central Metal "no choice" but to file for bankruptcy protection. The complaint states that Central Metal's credit was damaged "[b]ecause of the bankruptcy proceedings" such that it could not obtain loans sufficient to sustain the operation of the business. It consequently lost the trust of its customers, and its reputation in the scrap metal industry was tarnished.

The Bank filed a special motion to strike the complaint pursuant to Code of Civil Procedure section 425.16,[4] the anti-SLAPP statute. The Bank's anti-SLAPP motion contended the receivership action it filed against Central Metal qualifies as statutorily protected activity. The Bank also argued Central Metal could not establish a reasonable probability of prevailing on its causes of action because the lawsuit's causes of action are time-barred.

The trial court concluded Central Metal's complaint arose out of petitioning activity protected by the anti-SLAPP statute: "[T]he activity which forms the gravamen of plaintiffs' complaint is defendants filing the ex parte application for [appointment] of receiver which in turn triggered plaintiffs' bankruptcy filing that directly caused the harm of which they now have set forth in their pleadings." The court also determined that

---

[4]    Statutory references that follow are to the Code of Civil Procedure.

5

Central Metal could not establish a probability of prevailing on its causes of action, except for the unfair competition claim, because the statute of limitations had expired. The court therefore granted the Bank's anti-SLAPP motion to strike all of the complaint's causes of action except the fifth cause of action that asserts the unfair competition claim.

Central Metal appeals the order granting the Bank's anti-SLAPP motion.[5]

DISCUSSION

Central Metal argues the trial court should have denied the Bank's anti-SLAPP motion because the complaint[6] did not arise from statutorily protected activity; in Central Metal's view, the Bank's application to seek appointment of a receiver was merely a triggering event for the filing of the complaint, not the activity from which liability allegedly arises. Central Metal also argues that the applicable statutes of limitation are not a bar to demonstrating a probability of success on the merits. We hold to the contrary on both points and affirm the trial court's order.

The anti-SLAPP statute "requires the court to engage in a two-step process." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) "First, the defendant must make a prima facie showing that the plaintiff's 'cause of action . . . aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.'" (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.) "If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, at p. 67.) Where the anti-SLAPP statute applies and the plaintiff fails to establish that he has a probability of

---

[5]    After the notice of appeal was filed, the trial court found the Bank was a prevailing defendant under § 425.16, subd. (c)(1) and awarded $32,620.11 in attorney fees and costs. Plaintiffs did not appeal this order. The court also ordered the action stayed pending resolution of this appeal.

[6]    For purposes of the following discussion, our use of the term "complaint" is limited to the causes of action stricken by the trial court.

prevailing, the claims subject to the anti-SLAPP statute "shall be stricken." (*Simpson Strong-Tie Co., Inc. v. Gore*, *supra*, at p. 21.)

"'Whether section 425.16 applies and whether the plaintiff has shown a probability of prevailing are both legal questions which [the court] review[s] independently on appeal. [Citation.]'" (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 961), quoting *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1396.)

A. *The complaint was subject to an anti-SLAPP motion because it sought to impose liability for the Bank's exercise of its right to petition*

"A defendant who files a special motion to strike bears the initial burden of demonstrating that the challenged cause of action arises from protected activity." (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 669 (*Peregrine*).) "'In deciding whether the "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).)' [Citation.]" (*Id.* at p. 670.) Here, based on the allegations of the complaint, we conclude Central Metal's causes of action arise from the Bank's protected litigation conduct in the receivership action and the ensuing bankruptcy proceeding.

"Our Supreme Court has recognized the anti-SLAPP statute should be broadly construed [citation] and that a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a garden variety tort or contract claim when in fact the claim is predicated on protected speech or petitioning activity. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 90-92.) Accordingly, we disregard the labeling of the claim [citation] and instead 'examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies' and whether the trial court correctly ruled on the anti-SLAPP motion. [Citation.] We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-

7

producing conduct . . . that provides the foundation for the claim.' (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 189.)  If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute.  (*Martinez v. Metabolife Internat., Inc.*[, *supra,*] [] at p. 189.)" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271-1272.)

As we have previously observed:  "Section 425.16 defines an 'act of that person in furtherance of the person's right of petition or free speech . . . ' as including statements or writings made before a judicial proceeding or made in connection with an issue under consideration or review by a judicial body.  (§ 425.16, subd. (b)(1); see *id.* subd. (e).)  Thus, statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest." (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 965.)  Accordingly, the first prong of the anti-SLAPP analysis is satisfied when a plaintiff alleges he or she sustained injury as a result of the defendant's "statements, writings and pleadings in connection with civil litigation." (*Ibid.*)

The suit Central Metal filed against the Bank identifies the Bank's application for appointment of a receiver, and the resulting bankruptcy, as the source of the injury for which redress is sought.  Central Metal's complaint alleges:  "[The Bank] file[d] a civil complaint against [Central Metal] on or about January 6, 2010.  The following day, on or about January 7, 2010, [the Bank] also used the Focus report to file an ex parte application for appointment of a receiver to take possession, custody, and control of Central Metal."  According to the complaint, the Bank's receivership action, and in particular, its ex parte application for the appointment of a receiver, compelled Central Metal to file for Chapter 11 bankruptcy:  "With such short notice of the ex parte hearing seeking an involuntary receivership over Plaintiffs' family business assets and operations,

8

Plaintiffs had no other option but to file for Chapter 11 bankruptcy in order to save their 18 year-old family business from being seized and sold."

The complaint further alleges that Central Metal was harmed as a direct result of the bankruptcy filing, which was precipitated by the Bank's initiation of the receivership action. The complaint also contends the Bank's request for an examiner in the bankruptcy action injured Central Metal because the company was compelled to hire an independent consultant and forensic accountant at significant cost. Central Metal claims as damages the loss of business opportunities and its customers' good will as a result of the bankruptcy action, as well as attorneys' fees incurred in both the receivership and bankruptcy proceedings.

The Bank's actions in seeking legal redress to enforce its rights following Central Metal's loan defaults are therefore the basis for the suit's claims against the Bank. This qualifies as protected activity under the anti-SLAPP statute.

Central Metal, however, relies on several cases that hold "[a] claim does not arise from constitutionally protected activity simply because it is triggered by such activity or is filed after it occurs. [Citation.] Rather, the focus is on the substance of the lawsuit." (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1568; see also *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 272 ["If the mention of protected activity is 'only incidental to a cause of action based essentially on nonprotected activity,' then the anti-SLAPP statute does not apply"]; *Navellier v. Sletten*, *supra*, 29 Cal.4th 82, 89 ["[T]hat a cause of action arguably may have been 'triggered' by protected activity does not [mean] that it is one arising from such"].) The facts at issue in *Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790 (*Wang*) illustrate how the principle applies.

In *Wang,* the Wangs sold a portion of their land to Wal-Mart, with the understanding that Wal-Mart would relocate a road needed to provide them with access to their remaining adjoining property. In the development plans submitted to the City of San Bernardino, Wal-Mart did not include a relocated access road. Rather, Wal-Mart

9

obtained a city resolution that vacated the road and replaced it with emergency access and an alley, leaving the Wangs' property landlocked. The Wangs sued Wal-Mart and the city, among others, claiming that the defendants' planning and development of the Wal-Mart store wrongfully deprived their real property of street access. (*Wang, supra,* 153 Cal.App.4th at pp. 795-798.)

The defendants brought an anti-SLAPP motion, contending the allegations of the complaint arose from protected petitioning activity. The trial court granted the motion, ruling that all claims were based on the defendants' governmental permitting activity associated with the proposed development. (*Wang, supra,* 153 Cal.App.4th at p. 807.) The Court of Appeal reversed, holding that the acts underlying the Wangs' causes of action were "acts that Wal-Mart carried out in furtherance of its economic interests in implementing the contractual agreement. . . . " (*Id.* at p. 809.) The court explained: "The requests to governmental authorities for approval of land use planning items were made only in conjunction with the principal business transaction. The overall thrust of the complaint challenges the manner in which the parties privately dealt with one another, on both contractual and tort theories, and does not principally challenge the collateral activity of pursuing governmental approvals." (*Ibid.*) The court therefore concluded that plaintiffs' "causes of action raised only collateral or incidental facts with respect to any" protected petitioning conduct. (*Ibid.*)

Central Metal argues *Wang* applies on the facts here because the complaint's causes of action arise from the Bank's unlawful conduct in its business dealings with them, not the Bank's application for appointment of a receiver, which Central Metal contends was only incidental or collateral to the allegedly improper business dealings. We find Central Metal's argument unconvincing; the circumstances here are different from those at issue in *Wang* and the other cases cited by Central Metal.

The contract at issue in *Wang* contemplated that the Wangs' remaining parcels would retain street access, and the plaintiffs primarily sought to enforce the terms of their contract with Wal-Mart. The fact that enforcement of those terms would preclude Wal-

10

Mart from obtaining governmental permits to eliminate access to the plaintiffs' property was merely incidental to the gist of the complaint. (*Wang, supra,* 153 Cal.App.4th at p. 809.) The same cannot be said for the complaint in this case. The Bank's alleged scheme to take over Central Metal's business was premised on the Bank's ability to gain control of the company by installing a receiver to manage its financial affairs. The Bank's "fraudulent and unlawful" business dealings that Central Metal complains about—asserted oral promises to forego loan default proceedings and collusion with Focus to create false financial reports—could only harm the company if the Bank pursued its legal remedies of filing for receivership in order to execute on the pledged collateral. Thus, far from being incidental to the gist of the complaint, the receivership was the very method by which the Bank allegedly conspired with Focus to wrest control of Central Metal from its owners.[7] The receivership action is necessarily "the core injury-producing conduct" as set forth in the complaint.[8] (See, e.g., *Hylton v. Frank E. Rogozienski, Inc. supra,* 177 Cal.App.4th at p. 1272.)

In addition, the complaint alleges that, notwithstanding the Bank's written warnings regarding Central Metal's default and the Bank's intent to pursue its legal remedies, the Bank orally promised not to take legal action to enforce its rights under the loan agreements. However, even if the Bank had made such promises, it could have breached them only by taking legal action to enforce its rights, that is, by filing the

---

[7] We note as well that, although the complaint alleges that the Bank conspired with Focus to generate false reports of financial irregularities in order "to take possession of Plaintiffs' business," it had no need to rely on such reports. Plaintiffs had defaulted on their loans; it was that default that enabled the Bank to seek appointment of a receiver.

[8] Like its reliance on *Wang*, Central Metal's citation to *Baharian-Mehr v. Smith, surpa,* 189 Cal.App.4th 265 is unavailing. In that case, one business partner sued another, alleging causes of action relating to the defendant's mismanagement and misuse of corporate funds. Unlike the situation in *Baharian-Mehr v. Smith,* here Central Metal alleged that the Bank's litigation conduct directly caused the harm for which it seeks redress in this lawsuit. The complaint's causes of action thus were not incidental to, but were "*based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier v. Sletten., supra,* 29 Cal.4th at p. 89.)

receivership action and pursuing its remedies as a bankruptcy creditor. For this reason, too, the Bank's protected conduct is at the heart of the complaint's allegations and is not merely incidental or collateral as Central Metal contends.

Finally, according to Central Metal's own allegations, all of its alleged damages stem from the receivership action and the ensuing bankruptcy proceedings. Thus, even assuming for the sake of argument that the complaint's allegations include some unprotected conduct, the Bank's protected litigation conduct is central to Central Metal's causes of action and not a mere triggering event, as Central Metal argues. (See *Peregrine*, *supra*, 133 Cal.App.4th at p. 674 ["[E]stablishing a cause of action requires proof of causation and damages in addition to liability. Where, as here, a cause of action alleges the plaintiff was damaged by specific acts of the defendant that constitute protected activity under the statute, it defeats the letter and spirit of section 425.16 to hold it inapplicable because the liability element of the plaintiff's claim may be proven without reference to the protected activity"].)

The conduct Central Metal alleges caused it injury, that is, the acts upon which the causes of action are necessarily based, are protected litigation activities. We therefore hold the trial court correctly ruled that the Bank satisfied the first prong of the anti-SLAPP analysis.


B. *Central Metal failed to demonstrate a probability of prevailing on the causes of action stricken by the trial court*

Because the complaint is based on protected petitioning conduct, Central Metal bears the burden to establish a probability of prevailing on the merits of the alleged claims. (Code Civ. Proc., § 425.16, subd. (b)(1); *Navellier v. Sletten, supra,* 29 Cal.4th at p. 95.) To establish a probability of prevailing, "'the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is

12

credited.'" [Citations.]" (*Navellier v. Sletten, supra,* at pp. 88-89.) "The prima facie showing of merit must be made with evidence that is admissible at trial. [Citation.] Unverified allegations in the pleadings or averments made on information and belief cannot make the showing." (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1289.)

"[A] defendant may defeat a cause of action by showing the plaintiff cannot establish an element of its cause of action *or* by showing there is a complete defense to the cause of action. . . . " (*Peregrine*, *supra*, 133 Cal.App.4th at p. 676.) Here, the trial court properly granted the anti-SLAPP motion because Central Metal failed to demonstrate its causes of action—other than the fifth cause of action—were brought within the applicable statutes of limitation.

"'Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . [T]he limitations period begins once the plaintiff "'"has notice or information of circumstances to put a reasonable person *on inquiry*. . . .'"'" [Citation.] A plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.'" (*Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 818, quoting *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111.)

Central Metal argues it did not become aware of its causes of action until 2012, after it sued Focus in Florida and undertook discovery in that action. Central Metal contends "[i]t was only then that Plaintiffs discovered that the Bank never intended to honor its promises to refrain from taking legal action on Plaintiffs' technical defaults on the Loans and to enter into a revised loan payment schedule. . . . " Central Metal further argues it did not know until it conducted discovery in the Florida litigation that Focus and

13

the Bank were allegedly colluding to induce Plaintiffs into accepting Focus as a consultant as part of a scheme to take over Central Metal.

The trial court properly applied the discovery rule to reject Central Metal's arguments. The court determined that the causes of action necessarily accrued no later than January 6, 2010, the date the Bank sought and obtained the appointment of a receiver over Central Metal, because "plaintiffs knew . . . when the receiver was appointed . . . that defendants acted contrary to their alleged promise to establish a schedule of payments to cure the default and to refrain from legal action." The court also reasoned that by that time, Central Metal knew or must have suspected "the Focus Management Group had acted in direct conflict of its own clients' interest by being appointed receiver over plaintiffs' business when plaintiff had hired Focus Management Group to perform consulting services." Thus, as the trial court correctly found, "as of January [6], 2010, plaintiff had knowledge of all of the facts by which the causes of action would begin to accrue."

Indeed, at the hearing on the anti-SLAPP motion, Central Metal conceded that it was aware in January 2010, when the Bank filed the receivership action and Focus was appointed as a receiver, of at least some if not all of the conduct about which it now complains: "Plaintiffs were well aware that Focus had engaged in some wrongdoing by the January, February [2010], time frame . . . [¶] As [the] court . . . correctly notes, we were aware by January [2010] that the Bank was proceeding to enforce the loan default." "I agree with the court . . . it was the filing of the ex parte application itself that created the harm here. That triggered the harm that plaintiffs suffered and the fact that we needed . . . relief from such harm." A reasonable person aware of such facts would have been, in the words of our Supreme Court in *Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93, "on inquiry" at that time. (*Id.* at p. 101.)

Having determined that the statute of limitations on Central Metal's claims commenced to run no later than January of 2010, the trial court identified the limitations period applicable to each of the complaint's causes of action, as follows: fraud and

negligent misrepresentation, three years (Code Civ. Proc., § 338, subd. (d)); intentional and negligent interference with prospective economic advantage, two years (Code Civ. Proc., § 339, subd. (1)); professional negligence, two years (Code Civ. Proc., § 339, subd. (1); *Slavin v. Trout* (1993) 18 Cal.App.4th 1536, 1539); breach of oral contract and breach of the implied covenant of good faith and fair dealing, two years (Code Civ. Proc., § 339, subd. (1)); and breach of fiduciary duty, three years "because . . . the alleged breach was based on fraud" (Code Civ. Proc., § 338, subd. (d); *Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 963); and intentional and negligent infliction of emotional distress, two years (Code Civ. Proc., § 335.1; *Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1450). Central Metal does not dispute that the trial court correctly specified the statute of limitations applicable to each of the foregoing claims.

The court therefore determined that all of the complaint's causes of action were time-barred except for the unfair business practices claim under the Unfair Competition Law, Business and Professions Code section 17200 et seq. That determination was correct; a three-year statute of limitations (the longest for the aforementioned claims) ran in January 2013, long before the complaint was filed in January 2014. As to the unfair competition claim, the trial court found it was subject to a four-year limitations period (Bus. & Prof. Code, § 17208), and was therefore timely filed. The Bank does not appeal from that portion of the order declining to strike the unfair competition cause of action.[9]

---

[9]     On appeal, the Bank contends that all of plaintiffs' claims are barred by the litigation privilege (Civ. Code, § 47, subd. (b)) and the *Noerr-Pennington* doctrine (*People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 964.) These arguments were not presented to the trial court, and are consequently not properly before us on this appeal. (*Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 26 ["[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court"].)

In sum, we hold the trial court did not err in ruling that the complaint was subject to the anti-SLAPP law, and that Central Metal failed to make a prima facie showing of a probability of prevailing on the merits on all but the fifth cause of action in the complaint.

## DISPOSITION

The trial court's order granting in part the Bank's anti-SLAPP motion is affirmed. The Bank is awarded its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


TURNER, P.J.


KRIEGLER, J.