Filed 11/30/20  Reddi v. Reddi CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SATYA V. REDDI,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>SRIDHAR REDDI,<br><br>  Defendant and Respondent. | G058882<br><br>(Super. Ct. No. 30-2019-01056049)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Theodore R. Howard, Judge.  Affirmed.  Request for judicial notice granted.

Satya V. Reddi in pro per.

Donna Bader for Defendant and Respondent.

Satya V. Reddi appeals from the order dismissing his complaint against his adult son, Sridhar Reddi, for actions undertaken while Sridhar was acting as the guardian ad litem for his mother, Satya's former wife, Lakshmi Reddi.[1]  The court granted Sridhar's special motion to strike the complaint as a strategic lawsuit against public participation (anti-SLAPP motion).  (Code Civ. Proc., § 425.16.)[2]  On appeal, Satya raises over 14 issues, none of which have merit.  We affirm the order.

FACTS

I. *Background*

This is Satya's sixth appeal relating to the dissolution of his marriage. Three of the prior appeals are from judgments and orders made in the dissolution action itself.  Lakshmi's trial counsel, Hughes & Hughes, represented her in each of those family law appeals in her individual capacity and through her court-appointed guardian ad litem (GAL), Sridhar.  The other appeals are from actions Satya filed against his prior attorneys as well as Hughes & Hughes.

The five prior appeals are as follows:  (1) *In re Marriage of Reddi* (July 31, 2003, G029401) [nonpub. opn.] (*Reddi I*); *In re Marriage of Reddi* (Dec. 30, 2009, G040864) [nonpub. opn.] (*Reddi II*); *Reddi v. Zwick* (July 7, 2011, G044385) [nonpub. opn.] (*Reddi III*); *In re Marriage of Reddi* (Mar. 13, 2012, G044888) [nonpub. opn.] (*Reddi IV*); and *Reddi v. Hughes & Hughes* (Oct. 23, 2013, G047637) [nonpub. opn.] (*Reddi V*).  We grant Sridhar's request to take judicial notice of our prior opinions and other filings and documents considered by the trial court.  (Evid. Code, §§ 452, 459.)

---

[1]	We refer to the family members by their first names to avoid confusion. We intend no disrespect.

[2]	All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

The opinions in *Reddi IV* and *Reddi V* cogently set forth pertinent background regarding these actions:

"Satya and Lakshmi have been divorced since 2000, when they obtained a dissolution of the status of their marriage. The property and support issues were tried in 2001. The trial resulted in an order for permanent spousal support set at $3,000 a month. Since that time, Satya has complained vociferously on many occasions that the initial $3,000 support order was erroneous as a matter of law because it did not reflect the 'marital standard of living.' Significantly, though, Satya did not appeal from the judgment awarding his ex-wife $3,000. His first appeal, *Reddi I*, raised just one issue, and that only concerned the absence of a written tentative decision. (*Reddi I*, *supra*, G029401.) Thus, whether the support order was [an] abuse of discretion or not, Satya was stuck with a final judgment providing for $3,000 a month spousal support award. This court has no power to undo that final judgment.

"*Reddi I* was decided in 2003. In the ensuing seven years Satya launched no less than three separate [orders to show cause (OSC)] seeking to terminate or reduce his spousal support — in December 2004, May 2006, and June 2009 . . . .

"Each time Satya has tried to change the spousal support award he has had about as much luck as Don Quixote had in charging the windmills he mistook for giants. But each time Satya's lack of success would precipitate several rounds of collateral litigation, usually in the form of secondary requests by Lakshmi for attorney fees, followed by tertiary counterattacks from Satya in the form of requests to set aside or reconsider the inevitably ensuing attorney fee orders. In one case, the secondary and tertiary proceedings engendered the appeal which resulted in *Reddi II* [in which Satya obtained a reversal of two orders only because of unfortunate comments by the original trial judge indicating bias and not because of the merits]. All the while, the fees which Lakshmi incurred as a result of Satya's efforts would mount up.

3

"Satya also sued, for malpractice, the lawyers who handled his 2001 trial. Ironically, he obtained what this court noted in *Reddi III* as 'some significant relief' in that suit in the form of having his own legal fees of over $100,000 forgiven, plus receiving an extra $160,000 in a malpractice settlement. (*Reddi III*, *supra*, G044385.) And yet, dissatisfied with that 'significant relief,' he sued the lawyers for malpractice who obtained that relief for him. As we characterized his efforts in *Reddi III*, the case was 'literally, a malpractice action based on a previous malpractice action.' [Citation.]" (*Reddi IV*, *supra*, G044888, typed opn. at pp. 4-6, fns. omitted.)

"*Reddi IV*, *supra,* G044888, concerned proceedings surrounding Satya's third OSC to terminate Lakshmi's spousal support. Satya and his new wife resisted all Lakshmi's attempts at obtaining discovery related to the OSC. The trial court appointed a discovery referee. The discovery referee vigorously condemned Satya's obstreperous behavior describing it as follows: '"Grabbing a greased pig, wrestling an octopus, catching an eel, or finding the proverbial needle would be easier than obtaining discovery compliance from [Satya]."' [Citation.] '[The discovery referee] not only recommended the striking of Satya's [OSC] pleadings and payment of attorney fees to Lakshmi, he went so far as to propose criminal proceedings [against Satya] for disobedience to court orders.' [Citation.]" (*Reddi V*, *supra*, G047637, typed opn. at pp. 4-5.)

"The trial court ultimately implemented most of the discovery referee's recommendations entering orders that, among other things: dismissed Satya's OSC to modify spousal support; awarded Lakshmi $50,000 as sanctions under Family Code section 271; and awarded Lakshmi a total of $216,000 in accumulated attorney fees. [Citation.] On appeal, this court affirmed the trial court's order rejecting Satya's arguments, which were generally premised upon 'fundamental misunderstanding[s] of the litigation process.' [Citation.] Of note, we observed Satya's challenge to the attorney fees award 'amount[ed] to little more than ad hominem attacks on Lakshmi's counsel

4

[Hughes & Hughes], attributing to [it] a Rasputin-like influence on the trial judge.' [Citation.]" (*Reddi V*, *supra*, G047637, typed opn. at p. 5.)

"Having failed in all attempts to undo the spousal support order in the family law proceeding, Satya devised a different strategy. On July 27, 2012, he filed his pro. per. complaint against Hughes & Hughes. The monolithic pleading, filled with redundant hyperbole and invective, expands on the theme this court identified in *Reddi IV*, *supra,* G044888, i.e., he accuses Hughes & Hughes of improperly influencing or misleading every trial judge who has ruled in the family law action (and the various panels of this court that have affirmed the trial court orders), to rule against him." (*Reddi V*, *supra,* G047637 typed opn. at pp. 5-6.)

As described in *Reddi V*, *supra,* G047637, one of Satya's many contentions discussed Lakshami's role as GAL. "Hughes & Hughes withdrew as Lakshmi's attorney of record in 2005, but continued to litigate on her behalf, without demonstrating it had authority from her to do so. Instead, Hughes & Hughes filed a substitution of attorneys signed by Lakshmi's [GAL], the couple's adult son Sridhar, misleading the trial judges to believe Lakshmi was incompetent. Hughes & Hughes later filed a substitution of attorney signed by the GAL and Lakshmi, thus interfering with Satya's 'statutory right not to recognize them as [Lakshmi's] attorneys of record . . . .'" (*Reddi V, supra,* G047637 typed opn. at p. 6.)[3]

"Satya alleged Hughes & Hughes assigned Sridhar 'the role of fake [GAL] to act like a genuine court appointed [GAL] to maintain the litigation against Satya and extended credit line for legal fees far beyond what Sridhar can afford to pay.' He alleged

---

[3] This court in *Reddi V* explained, "Documents submitted in support of the [law firm's] special motion to strike included the 2000 order appointing Sridhar, a medical doctor, as Lakshmi's GAL because she 'has been determined to have a reading comprehension level which demands assistance in this proceeding' as determined in a professional vocational examination and evaluation. Satya was unsuccessful in his motions in the family law proceeding to have the GAL removed." (*Reddi V, supra,* G047637 typed opn. at p. 6, fn. 4.)

5

Hughes & Hughes 'knew that Lakshmi was a competent person to understand the court proceedings and testify. However, they deliberately, intentionally, and maliciously lied to every judge that Lakshmi was an incompetent person and presented the fake [GAL] to act like a court appointed genuine [GAL] to defeat the due administration of justice.' Satya alleged various facts pertaining to Lakshmi's education and ability to read and understand English that he contended undermined the family court's appointment of a GAL for her." (*Reddi V, supra,* G047637 typed opn. at pp. 6-7.)

In *Reddi V, supra,* G047637, we affirmed the trial court's determination that all 12 causes of action (in the 77-page complaint) arose from protected activity and Satya could not demonstrate a probability of prevailing because the alleged misconduct was absolutely protected by the litigation privilege of Civil Code section 47, subdivision (b). Thereafter, the California Supreme Court denied Satya's petition for review. Undeterred, Satya filed and lost (1) his malpractice action against Hughes & Hughes filed in a federal district court, (2) his appeal before the United States Court of Appeals, Ninth Circuit, and (3) his petition for a writ of certiorari before the United States Supreme Court.

II. *The Current Action*

Having failed to undo the spousal support order in family law proceedings and legal malpractice lawsuits, Satya next set his sights on his son. Specifically, Satya's current lawsuit asserted Sridhar's actions as a fake GAL were grounds to set aside the support orders. The allegations regarding Sridhar are the same ones raised in his unsuccessful lawsuit against Hughes & Hughes.

Satya's complaint requested equitable relief due to void spousal support and attorney fee orders entered while Sridhar was acting as his mother's GAL. Satya maintained Sridhar must pay him for the "alimony" and legal fees paid to Lakshmi. The complaint alleged Sridhar was a "substantial factor" in causing Satya harm by "obtaining legal standing through intentional misrepresentation directed to the trial court judges[.]"

6

The complaint alleged there was "no court record" of Lakshmi's incompetency or Sridhar' appointment as Lakshmi's GAL.

Sridhar filed an anti-SLAPP motion alleging "the gravamen of Satya's complaint stem directly from the communicative actions taken by [Sridhar] during the dissolution of marriage litigation by way of the pleadings prepared and filed in that litigation and the arguments made therein." Sridhar asserted a lawsuit essentially attacking the validity of court orders was nonsensical because Sridhar lacked authority to make or change court orders. Moreover, he maintained Satya's lawsuit had procedural issues because it was not filed in the same court that made the purportedly void order. In support of this motion, Sridhar filed a request for judicial notice of the court's order appointing him as GAL and other documents relevant to his motion.

Satya filed an opposition supported by his declaration and a lengthy request for judicial notice (over 200 pages). He argued Sridhar could not file an anti-SLAPP motion because he lacked the right to petition. Satya set forth multiple reasons why he had a probability of prevailing, primarily based on the premise the court's orders were void as a matter of law. He also objected to Sridhar's request for judicial notice.

The court granted the motion, applying the two prong test set forth in section 425.16. It concluded Sridhar was being sued for protective activity. (§ 425.16, subds. (b)(1), (e)(1), (e)(2).) It reasoned as follows: "[Satya] is suing [Sridhar], [Satya's] son, for acting as the guardian ad litem . . . in a prior marital dissolution case between [Satya] and Lakshmi. [Citation.] [Sridhar] is accused of acting as the GAL, when he should not have been . . . . [Sridhar] allegedly made misrepresentations to the family court, which led the court to issue orders against [Satya] regarding spousal support and regarding payment of attorney fees, which caused financial harm to [Satya]. [Citation.] [¶] This appears to be a classic situation of a defendant being sued for participating in a prior litigation. [Citations.] [¶] There is no known requirement that the person have been the real-party-in-interest in the prior litigation, to be able to invoke the protection of the

7

anti-SLAPP statute. While a [GAL] is not technically the party to a case, he is the representative of the party. He appears of record in the case, and represents the interests of his ward, the party, in the legal proceeding. [Citation.] The GAL is appointed to prosecute or defend the suit and has the power to assent to procedural steps that facilitate a determination of the ward's litigation. The GAL actively represents the interests of the party in legal proceedings. [Citation.] [¶] This is analogous to a lawyer acting for a party in the litigation. When the lawyer is sued for his communicative acts in representing the client, it is well settled that the lawyer enjoys the protection of the anti-SLAPP statute. By its terms, the statute applies to 'a[ny] person.' [Citations.]"

The trial court rejected Satya's attempt to apply the illegality exception to the anti-SLAPP remedy. It reasoned as follows: "[Satya] advocates that . . . anti-SLAPP doesn't apply because [Sridhar's] actions were 'illegal' here. [Citation.] But it is not enough to merely allege that acts were 'illegal' to maneuver around the reach of the statute. There is a high threshold that must be met to come within this exception. [Sridhar's] 'conduct must be illegal as a matter of law' and something akin to a crime. Here that [was] not shown to be the case, there [was] no crime involved. [Citation.] Further, the illegality must be conceded by [Sridhar], and this too is not present here. [Citation.] The illegality exception does not apply. [Sridhar] can properly invoke the protection of the anti-SLAPP statute."

As for the second prong, the court ruled as follows: "[Satya] does not demonstrate the suit has minimal merit, for the action to proceed. [¶] The [l]itigation [p]rivilege [w]ould [b]ar the [s]uit. [¶] The litigation privilege precludes liability arising from a publication or broadcast made in a judicial proceeding or other official proceeding. [Citation.] It applies to any communication made in the course of judicial proceedings where the statements are made to achieve the objects of the litigation and have some connection or logical relation to the action. It is not limited to statements made during a trial or other proceeding, but extends to steps taken prior thereto, or

8

afterwards. [Citation.] Its purpose is to afford litigants free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation. To effectuate these purposes, the privilege is absolute and applies regardless of malice. In furtherance of the public policy it serves, the privilege has been given broad application. [Citation.] [¶] The litigation privilege is often co-extensive with the application of subdivision (e)(1) and (e)(2) of the anti-SLAPP statute. Pleadings, process, and communications to a court, are exercises of litigation rights and privilege. [Citations.] [¶] Just as the lawsuit is attacking [Sridhar's ] actions and participation in the family-court proceedings [citations] so too, does the litigation privilege protect [Sridhar] from any subsequent effort to impose liability upon him for his participation in that suit."

The court noted Satya also has no probability of prevailing because either the issues had already been litigated or it was too late to raise them now. It ruled as follows: "[Satya's] suit does not appear to withstand scrutiny because of the prior opportunities he has enjoyed to raise these and similar challenges. [¶] First, in April 2010, [Satya] filed a petition in the family case to remove [Sridhar] as the [GAL]. He outlined reasons why the appointment was believed to be improper including that [Satya's] former spouse was allegedly deceiving the court about her alleged incompetence, that she had testified competently in a prior lawsuit concerning the marital real estate . . . . [F]urther, the GAL had been appointed only for trial, and could not continue to act especially in post [j]udgment matters that were happening in the case, which were extensive. [Citations.] [¶] Similar allegations are made in the [c]omplaint here too. [Citation.] [¶] [Satya] received an opportunity to litigate that matter, in the family court, with a motion, an opposition, and a hearing before the judicial officer. The court denied the request to remove the GAL, by an order issued October of 2010. [Citation.]"

9

The court noted Satya had a second opportunity to litigate the issue in the trial court because in September 2010 he "filed another motion which in some sense, was a motion for reconsideration of the prior decision not to remove [Sridhar] as GAL." The court explained Satya filed a motion "'for fraud on the court,'" where he "continued to question the alleged 'incompetence' of his former spouse and the necessity for a GAL." The court recalled that Satya again asserted, "the initial appointment, and the continued service of, and the denial of the prior motion to remove the GAL, were the result of fraud and misinformation to the court, including by the GAL himself, by the former spouse, and by their attorneys. [Citations.]" The court concluded Satya raised these same allegations in his lawsuit against Sridhar despite being considered and rejected in November 2010. It noted Satya's appeal from the family law judgment did not challenge the rulings concerning the GAL.

The court discussed Satya's state and federal lawsuits against Lakshmi's lawyers, which also alleged Sridhar was a "'fake'" GAL, whose actions were unnecessary and fraudulent. The court stated, "This suggests that many years ago, as early as [July 20, 2012, Satya] suspected, or had reason to suspect the challenges he is making now, which resonate with allegations that he has made in past cases. [Citations.]"

After discussing case law regarding what facts will typically trigger the applicable statute of limitations, the court discussed the doctrine of claim preclusion. The court concluded that even if the claim was not time barred the doctrine of claim preclusion would apply because "[t]he primary right that [Satya] was litigating in the family court, in 2010, was the right not to have [Sridhar] serve as the GAL, so that [his] efforts to correct 'excess' spousal support obligations could be presented without unnecessary challenge." Therefore, Satya sought to remove the GAL to stop him from interfering in Satya's efforts to modify spousal support. Similarly, in his lawsuit against the GAL, "the same injury appears to be resurfacing" because Satya is seeking to set

10

aside support orders influenced by the GAL. "The new theory for attacking the orders is that they are void." The court concluded Satya had the opportunity to raise this challenge in 2010, "whether it is labeled as a 'fraud' on the court or 'void' orders that issued."

The court noted in the final section of its minute order, titled "Other Observations" that the correct forum for presenting a request to set aside the support order would be in family court "within the underlying family case." It concluded the Family Code provisions and section 473, subdivision (b), "'preempt traditional common law principles governing equitable relief from judgments'" and serve to preclude Satya's civil suit. And finally, the court awarded Sridhar attorney fees ($4,060) as the prevailing party.

DISCUSSION

I. *Anti-SLAPP Law and the Standard of Review*

"Subdivision (b)(1) of . . . section 425.16 provides that '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' Subdivision (e) of section 425.16 elaborates the four types of acts within the ambit of SLAPP. [¶] . . . [¶] 'A two-step process is used for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity, that is, by demonstrating that the facts underlying the plaintiff's complaint fit one of the categories spelled out in section 425.16, subdivision (e). If the court finds that such a showing has been made, it must then determine the second step, whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.]'" (*Cross v. Facebook, Inc*. (2017) 14 Cal.App.5th 190, 198, fn. omitted (*Cross*).)

11

"""The Legislature enacted section 425.16 to prevent and deter 'lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' [Citation.] Because these meritless lawsuits seek to deplete 'the defendant's energy' and drain 'his or her resources' [citation], the Legislature sought '"to prevent SLAPPs by ending them early and without great cost to the SLAPP target"' [citation]. Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." [Citation.] [¶] 'Finally, and as subdivision (a) of section 425.16 expressly mandates, the section "shall be construed broadly." [¶] 'With these principles in mind, we turn to a review of the issues before us, a review that is de novo. [Citation.]'" (*Cross, supra,* 14 Cal.App.5th at pp. 198-199.)

II. *First Prong*

"Section 425.16, subdivision (e) identifies the categories of conduct that are protected under the anti-SLAPP statute and that may support a motion to strike if a plaintiff's claim arises from such conduct. One category of such protected conduct is 'any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.' (§ 425.16, subd. (e)(2).) A claim arises from protected activity when it is 'based on' such activity. [Citations.]" (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 934.)

Satya's equitable relief action against Sridhar is subject to a special motion to strike under the plain, unambiguous language of the anti-SLAPP statute. Satya's cause of action, based upon Sridhar's oral and written statements acting as a GAL, were made "in connection with an issue under consideration or review by a . . . judicial body . . . ." (§ 425.16, subd. (e)(2).) As aptly stated by the trial court, "This appears to be a classic situation of a defendant being sued for participating in a prior litigation."

12

Satya asserts there are four reasons why his compliant was "not subject to" section 425.16. We conclude each contention lacks merit.

A. *Federal Preemption*

First, Satya maintains the anti-SLAPP statute is bound by "obstacle preemption" as stated by the supremacy clause of the United States Constitution. He reasons the family law case was a dispute between himself and Lakshmi and, therefore, the trial court owed a duty "to keep others out of such litigation." He construes Family Code section 142, as creating a "firewall" in addition to a constitutional right giving parties the freedom to litigate without outside interference. He believes the family law court had a duty to balance his constitutional rights against Sridhar's rights, when Sridhar "broke the firewall."

The next section of Satya's legal argument is difficult to decipher. We have done our best. Satya maintains the family law court failed to follow "proper judicial protocols" by letting Sridhar act as his mother's GAL. Satya argues he has the "constitutional right to file a complaint to redress the court's victimization under the state and federal constitutions." He concludes the trial court cannot use the anti-SLAPP statute "to deny [this] judicial remedy," and therefore, the state statute is preempted by the supremacy clause. He adds the anti-SLAPP statute "must be preempted by the [p]etition clause allowing Satya to exercise his right to petition under [the] [United States] Constitution to redress [the] court's victimization." To summarize, it appears Satya believes that because he has a constitutional right to remedy the family law court's procedural mistake, a civil trial judge cannot use this state's anti-SLAPP statute to block his lawsuit. As was the case with Satay's allegations in *Reddi V*, *supra*, G047637, this argument is premised on a fundamental misunderstanding of the litigation process.

Not surprisingly, Satya provides no case authority to support his theory Family Code section 142 "is the firewall to keep others out" of litigation and should be construed as the basis for multiple constitutional rights and protections. The statutory

13

provision simply defines "'spousal support'" as meaning "support of the spouse of the obligor." (Fam. Code, § 142.) Satya also fails to provide legal authority to support his assertion there is an absolute, constitutionally guaranteed right to "redress [a family law] court's victimization" following a purported procedural error. Moreover, he cites no authority suggesting the alleged constitutional right to remedy a court's mistake should be expanded to include an unconstrained right to sue a court-appointed GAL. Satya does not appear to understand a nonparty cannot correct or overturn a court order. In light of the above, we conclude Satya forfeited his preemption argument by failing to present an adequate legal analysis or relevant case authority. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*) [appellant must present reasoned argument]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979; *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3 [reviewing court may disregard contentions unsupported by legal or factual analysis].)

B. *Actions Seeking Equitable Relief Against Judgment*

Satya's second argument is section 425.16 "can't be invoked when [a] complaint seeks relief from void orders." (Bold omitted.) He argues "the main issue of the present litigation is subject matter jurisdiction to appoint [a GAL] on the basis of English '*reading comprehension*' skills . . . ." He contends that if the court lacked jurisdiction to appoint Sridhar the GAL "then any dismissal of the complaint amounts to breathing life into void orders . . . [and] the order dismissing the complaint itself will be void as a matter of law." We interpret Satya's argument as asserting he has an absolute right to sue anyone who benefitted from a void court order. He is wrong for several reasons.

First, the appropriate procedures for seeking relief from void orders are well settled. (See 8 Witkin, Cal. Procedure (5th ed. 2020 supp.) Attack on Judgment in Trial Court, §§ 207, p. 203 [judgment void on its face], 208, 209, p. 204 [judgment valid on its face].) As discussed above, the family law court has already rejected Satya's

14

multiple attempts to vacate the allegedly void spousal support order using these procedures.

Second, we appreciate that a party may also seek equitable relief against a void judgment. (8 Witkin, *supra,* § 218, at p. 825 [relief by action].) This remedy "is ordinarily given in an independent action by the losing party against *the successful party* to prevent the latter from making use of the benefits of the judgment" or "defensively in the course of an action *by the successful party* on the judgment." (*Ibid.,* italics added.) Satya cites to no case authority, and we found none, holding an independent equitable action against a void judgment may be brought against someone other than the successful party, which in this case was the supported spouse Lakshmi.

Satya fails to appreciate Lakshmi, not the GAL, benefitted from the spousal support order and attorney fee awards. To the extent Satya's lawsuit also seeks to overturn the court's GAL appointment order, Satya fails to suggest how Sridhar personally benefitted in his role as guardian.

Third, Satya relies on inapplicable case authority. For example, in *State Farm General Ins. Co. v. Majorino* (2002) 99 Cal.App.4th 974 (*Majorino*), an insurer brought a declaratory relief action against the parties in an underlying lawsuit, seeking a judicial determination that the insurer had no duty to defend and indemnify the underlying defendants (its insureds). (*Id.* at p. 976.) The underlying plaintiffs filed an anti-SLAPP motion in the insurer's action. (*Ibid.*) The trial court and appellate court agreed the declaratory relief action did not arise from the underlying action. (*Id.* at p. 977.) The appellate court held that "an insurance company's declaratory relief action to resolve coverage issues does not qualify as a SLAPP suit" because although the personal injury suit triggered the chain of events that caused the insurer to seek a judicial declaration, the action "*arose* from the tender of defense and the terms of an insurance policy issued well before the underlying litigation commenced, not from the litigation process itself. [Citation.]" (*Id.* at pp. 975, 977.) "Treating [the insurer's] declaratory

15

relief action as a SLAPP suit would be inconsistent with the fundamental purpose of section 425.16, namely, to stem the flow of 'lawsuits brought primarily to chill the valid exercise of . . . constitutional rights.' [Citations.]" (*Id.* at p. 978.)

In short, the *Majorino* case concerned the unique situation where a nonparty filed an action related to ongoing litigation and after protective activity took place. The court resolved the limited issue of whether the *nonparty's lawsuit* arose from the protected activity for the purposes of the anti-SLAPP statute. (*Majorino, supra,* 99 Cal.App.4th at pp. 977-978.) The case is factually distinguishable because Satya is not similarly situated to the insurer because Satya is a party in the underlying lawsuit. His lawsuit seeks to overturn allegedly void orders issued *against him* in the ongoing litigation and challenges the opposing party's GAL's litigation tactics. Unlike the insurer, Satay's equitable claim is directly based on the "litigation process itself." (*Id.* at pp. 975, 977.)

We note Satya cites to several other inapplicable cases concerning outsiders seeking equitable relief by intervening or requesting declaratory relief related to ongoing litigation. (See *Episcopal Church Cases* (2009) 45 Cal.4th 467, 477 [national church sought leave to intervene in ongoing dispute between local church members about church property]; *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 346 [litigation seeking judicial review of public entity's decision]; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [city's declaratory relief action was not one "arising from" mobile home park owners' federal declaratory relief action concerning same statute and thus owners' anti-SLAPP motion meritless].) As explained by our Supreme Court, "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is

16

whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' [Citation.]" (*Episcopal Church Cases, supra,* 45 Cal.4th at p. 477.)

Legal authority deciding when a nonparty's equitable claim arises out of protected activity does not assist Satya who is a party seeking to overturn orders issued in his own lawsuit. Satya fails to appreciate the critical consideration is not whether he has framed his complaint as being "equitable" in nature, but rather whether or not his claim was based on protected activity. In this case, it is clear Satya sued Sridhar for his participation in the marital dissolution action, and for no other reason. The trial court correctly determined Satya based his complaint on protected activity.

C. *Sridhar's Standing to Utilize the Anti-SLAPP Statute*

Satya asserts "it is legally impossible for Sridhar to show he had legal standing to exercise his mother's right of petition and invoke [the] anti-SLAPP act." He adds, "Sridhar's involvement is an anomaly, which is not covered by [section] 425.16 and should not be allowed." He concludes the Legislature did not intend for section 425.16 to protect a third "party's intrusion into pending litigation between divorced spouses without statutory judicial protocols." (Bold omitted.) Satya appears to confuse and merge the issues of Sridhar's standing in the dissolution action to act as the GAL and his standing *as a defendant* in the civil action to file an anti-SLAPP motion.

Turning first to Satya's claim Sridhar lacked standing in the dissolution action, we understand the reasons why Satya's believes Sridhar was not authorized to act on Lakshmi's behalf. However, even if we were to assume (only for the sake of argument) the court did not follow the proper procedures in appointing Sridhar as the GAL, Satya does not explain why the court's error impacts Sridhar's standing as a defendant in this civil action. Sridhar used the anti-SLAPP statute as the Legislature intended by moving to strike claims arising from conduct "made in connection with an issue under consideration or review by a . . . judicial body[.]" (§ 425.16, subd. (e)(2).) The only "anomaly" in this case is the theory that a court-appointed GAL should be held

17

personally liable for financial losses related to support orders issued by a family law court.

Moreover, the issue of Sridhar's standing in the dissolution action was decided long ago. As the trial court discussed at length in its minute order, Satya had multiple opportunities to dispute the GAL's appointment, but he did not timely appeal the appointment order. Satya fails to cite any legal authority permitting him to challenge the appointment order 20 years after the fact. His argument anti-SLAPP cannot be used to protect against third party intrusion is nonsensical because Sridhar did not file an anti-SLAPP motion in the dissolution action.

In summary, we are unconvinced by Satya's logic (unsupported by any legal authority) that Sridhar's actions as GAL in the dissolution action put the anti-SLAPP statute out of his reach in this civil action. (See *Badie, supra,* 67 Cal.App.4th at pp. 784-785 [appellant must present reasoned argument].)

D. *Application of the Illegality Exception*

Satya asserts Sridhar's conduct of improperly acting as GAL amounted to "impersonation as an officer of the court under [Penal Code section 529]." Citing Evidence Code sections 412 and 413, Satya contends we must infer Sridhar lacked legal standing to act as the GAL due to his failure to present sufficient evidence supporting his appointment because Lakshmi was not incompetent. Based on this premise, Satya leaps to the conclusion Sridhar was "not entitled to protection under [section 425.16] because his conduct is illegal as a matter of law in each and every special proceeding." To support this theory, Satya cites to *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*).

Satya misapprehends the scope of the illegality exception set forth in the *Flatley* case. Our Supreme Court held, "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but *either the defendant concedes, or the evidence conclusively establishes*, that

18

the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley, supra,* 39 Cal.4th at p. 320, italics added.)  This is because a defendant whose assertedly protected activity is "illegal as a matter of law" is not protected by constitutional guarantees of free speech and petition.  (*Id.* at p. 317.)

"""'[I]llegal'" in this context refers to criminal conduct; merely violating a statute is not sufficient because the broad protection the anti-SLAPP statute provides for constitutional rights would be significantly undermined if all statutory violations were exempt from the statute.  [Citation.]  In establishing this exclusion from the anti-SLAPP statute, the Supreme Court [in *Flatley*] "'emphasize[d] that the question of whether the defendant's underlying conduct was *illegal* as a matter of law is preliminary, and unrelated to the second prong question of whether the plaintiff has demonstrated a probability of prevailing, and [that] the showing required to establish conduct *illegal* as a matter of law—either through [the] defendant's concession or by uncontroverted and conclusive evidence—is not the same showing as the plaintiff's second prong showing of probability of prevailing.'"  [Citation.]'  [Citation.]"  (*Aron v. WIB Holdings* (2018) 21 Cal.App.5th 1069, 1083-1084 [jury's answers on special verdict form created questions of fact precluding court from concluding party's conduct violated harassment ordinance as a matter of law]; *Collier v. Harris* (2015) 240 Cal.App.4th 41, 55 (*Collier*) [insufficient evidence of criminal impersonation of another under Penal Code section 529].)[4]  In *Flatley*, the court concluded that "based on the specific and extreme circumstances of this case," the defendant's conduct therein, which amounted to criminal

---

[4]     Because "illegal" clearly refers to criminal conduct, we are unpersuaded by Satya's alternative argument that *intentional misrepresentations* to a court would be sufficient to apply the illegality exception.  The case he cites, *Sosa v. DIRECTV, Inc.* (9th Cir. 2006) 437 F.3d 923, does not address application of the illegality exception to section 425.16.  Rather, the case refers to application of the *Noerr–Pennington* doctrine, which provides that those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.  (*Id.* at p. 929.)

19

extortion as a matter of law, was not entitled to the protection of the anti-SLAPP. (*Flatley, supra,* 39 Cal.4th at pp. 328, 332-333 & fn. 16.)

In our case, Satya contends the illegality exception applies because Sridhar criminally impersonated "as an officer of the court" under Penal Code section 529." "That statute makes it a crime for a person to falsely impersonate another and in that assumed identity do any 'act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person.' (Pen. Code, § 529, subd. (a)(3).) A person therefore must commit two acts to violate Penal Code section 529. He or she first must falsely impersonate another person and, while doing so, commit an additional act that '"is something beyond, or compounding, the initial false personation."' [Citation.] [¶] . . . '[T]he offense of false personation requires a *deliberate effort* to pass oneself off as another.' [Citation.] For example, in *People v. Maurin* (1888) 77 Cal.436, the Supreme Court reversed a conviction under Penal Code section 529 because the defendant had not represented himself to be another person when he signed a doctor's name to a death certificate." (*Collier, supra,* 240 Cal.App.4th at pp. 55-56.)

We conclude the illegality exception does not apply because (1) Sridhar does not concede illegality, and (2) the evidence does not conclusively establish illegality "as a matter of law." There is no evidence Sridhar falsely represented himself to be Lakshmi's GAL. To the contrary, all parties were aware of his petition to serve as the GAL. After obtaining the court's approval, there was no need to impersonate or falsely represent his authority to act on his mother's behalf. As determined by the trial court, Satya failed his burden of showing the GAL committed any crime bringing Sridhar's litigation-related activities within the ambit of *Flatley*.

20

III. *The Second Prong*

"Because of the conclusions we have reached regarding the first prong of the anti-SLAPP analysis, we need not proceed to evaluate whether [Satya] adequately showed a probability of prevailing in the action. (§ 425.16, subd. (b)(1).)" (*Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 811.)

## DISPOSITION

We affirm the order and grant respondent's request for judicial notice. Respondent shall recover his costs on appeal.

O'LEARY, P. J.

WE CONCUR:

ARONSON, J.

FYBEL, J.